## ADAMS *v.* NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 504. Argued January 27, 1904.—Decided February 23, 1904.

The fact that papers, which are pertinent to the issue, may have been illegally taken from the possession of the party against whom they are offered is not a valid objection to their admissibility. The court considers the competency of the evidence and not the method by which it was obtained.

There is no violation of the constitutional guaranty of privilege from unlawful searches and seizures in admitting as evidence in a criminal trial, papers found in the execution of a valid search warrant prior to the indictment; and by the introduction of such evidence defendant is not compelled to incriminate himself.

It is within the established power of a State to prescribe the evidence which is to be received in its own courts. The provisions of sections 344a, and 344b, of the Penal Code of New York making the possession of policy slips by a person other than a public officer presumption of possession

knowingly in violation of law are not violative of the Fourteenth Amendment, are not unconstitutional as depriving a citizen of his liberty or property without due process of law, and do not, on account of the exception as to public officers, deprive him of the equal protection of the laws.
A suggested construction of a state statute which would lead to a manifest absurdity and which has not, and is not likely to receive judicial sanction, will not be accepted by this court as the basis of declaring the statute unconstitutional when the courts of the State have given it a construction which is the only one consistent with its purposes and under which it is constitutional.

THIS is a writ of error to the Supreme Court of the State of New York. The plaintiff in error at the April term, 1903, of the Supreme Court of the State of New York was tried before one of the justices of that court and a jury and convicted of the crime of having in his possession, knowingly, certain gambling paraphernalia used in the game commonly known as policy, in violation of section 344*a* of the Penal Code of the State of New York. This section and the one following, section 344*b*, relating to the offence in question, are as follows:

"SEC. 344*a*. Keeping Place to Play Policy.—A person who keeps, occupies or uses, or permits to be kept, occupied or used, a place, building, room, table, establishment or apparatus for policy playing, or for the sale of what are commonly called 'lottery policies,' or who delivers or receives money or other valuable consideration in playing policy, or in aiding in the playing thereof, or for what is commonly called a 'lottery policy,' or for any writing, paper or document in the nature of a bet, wager or insurance upon the drawing or drawn numbers of any public or private lottery; or who shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called 'policy,' or in the nature of a bet, wager or insurance, upon the drawing or drawn numbers of any public or private lottery; or any paper, print, writing, numbers, device, policy slip or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly called 'policy'; or who is the owner, agent, superintendent, janitor or caretaker of any place, building or room where policy play-

ing or the sale of what are commonly called ' lottery policies' is carried on with his knowledge or after notification that the premises are so used, permits such use to be continued, or who aids, assists or abets in any manner, in any of the offences, acts or matters herein named, is a common gambler, and punishable by imprisonment for not more than two years, and in the discretion of the court, by a fine not exceeding one thousand dollars, or both.

"SEC. 344*b*. Possession of Policy Slip, etc., Presumptive Evidence.—The possession, by any person other than a public officer, of any writing, paper or document representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called 'policy,' or in the nature of a bet, wager or insurance upon the drawing or drawn numbers of any public or private lottery, or any paper, print, writing, numbers or device, policy slip or article of any kind, such as is commonly used in carrying on, promoting or playing the game commonly called 'policy,' is presumptive evidence of possession thereof knowingly and in violation of the provisions of section three hundred and forty-four *a*."

The assignments of error in this court are:

"*First.* That the court erred in holding that by the reception in evidence of the defendant's private papers seized in the raid of his premises, against his protest and without his consent, which had no relation whatsoever to the game of policy, for the possession of papers used in connection with which said game he was convicted, his constitutional right to be secure in his person, papers and effects against unreasonable searches and seizures was not violated, and that he was also thereby not compelled to be a witness against himself in contravention of the Fourth, Fifth and Fourteenth Articles of Amendment to the Constitution of the United States.

"*Second.* That the court erred in holding that the statute, sections 344*a*, 344*b*, of the Penal Code of the State of New York, under which the indictment against the plaintiff in error was found, and his conviction was had, did not deprive him of rights, privileges and immunities secured to other citizens of

the United States and of said State of New York, nor of liberty or property, without due process of law, nor of the equal protection of the laws in violation of section 1 of the Fourteenth Article of Amendment to the Constitution of the United States.

· " *Third.* That the court erred in affirming the judgment of conviction, and in refusing to discharge the plaintiff in error from custody."

The game of policy referred to in the sections of the statute quoted is a lottery scheme carried on, as shown in the testimony, by means of certain numbers procured at the shop or place where . the game is played, and consists in an attempt to guess whether one or more of the series held by the player will be included · in a list of twelve or at times thirteen of the numbers between one and seventy-eight, which are supposed to be drawn daily at the headquarters of the operators of the game.. A person desiring to play the game causes the numbers to be entered on series of slips or manifold sheets. One of these pieces of paper containing the combination played by the person entering the game is kept by him and is known as a policy slip. Drawings are held twice a day, and the holder of the successful combination receives the money which goes to the winner of the game. About 3500 of these slips were found in the office occupied by · the plaintiff in error, which was searched by certain police officers holding a search warrant. The officers took not only the policy slips, but certain other papers, which were received in evidence against the plaintiff in error at the trial, against his objection, for the purpose of identifying certain handwriting of the defendant upon the slips, and also to show that the papers belonged to the defendant and were in the same custody as the policy slips.

So far as the case presents a Federal question, the Court of Appeals of the State of New York held (176 N. Y. 351) that the Fourth and Fifth Amendments to the Constitution of the United States do not contain limitations upon the power of the States, and proceeded to examine the case in the light of similar provisions in the Constitution and bill of rights of that State.

*Mr.· L. Laflin Kellogg,* with whom *Mr. Alfred C. Petté* was on the brief, for plaintiff in error:

The record in this case presents a Federal question which should be reviewed by this court. When the private papers seized in the raid of the defendant's premises were offered in evidence upon the trial, their reception was objected to on the express ground that their introduction would be in violation of the defendant's rights secured to him by the Constitution of the United States, and the same question was presented to and decided adversely by the Appellate Division and the Court of Appeals. As to the application of the Fourth and Fifth Amendments to proceedings in state court, see *Maxwell* v. *Dow,* 176 U. S. 581; *Brown* v. *New Jersey,* 175 U. S. 582.

The rights of a person to be secure in his person, papers and effects against unreasonable searches and seizures, and not to be compelled in a criminal case to be a witness against himself, are fundamental rights of American citizenship and protected by the Federal Constitution against legislation by the States. *Maxwell* v. *Dow, supra.*

There is no intimation, however, that if a violation of the Federal Constitution had been the ground of objection in the state court, and an adverse decision had been reached, a Federal question would not have been presented for review by this court. *Levy* v. *Superior Court of San Francisco,* 167 U. S. 175; *Mallett* v. *North Carolina,* 181 U. S. 589.

Sections 344*a*, 344*b*, New York Penal Code, are unconstitutional because to create an arbitrary presumption of guilt is to deprive a defendant of his liberty and property without " due process of law," in that the right to be presumed innocent until he is proven to be guilty is taken away, and the right to a jury trial is thereby curtailed. *State* v. *Beswick,* 13 R. I. 211; *Wynehamer* v. *People,* 13 N. Y. 446; to except from that presumption every public officer, and to make it applicable only to private citizens, is to deny the equal protection of the laws; to make the possession of these articles which are in themselves harmless, a criminal offence is an arbitrary exercise of power.

By the reception in evidence of the defendant's private

papers, seized in the raid which had no relation to the game of policy, his constitutional right to be secure in his person, papers and effects against unreasonable searches and seizures was violated, and he was also thereby compelled to be a witness against himself in contravention of the Fourth, Fifth and Fourteenth Amendments, and defendant's rights were grossly violated. *Boyd* v. *United States*, 116 U. S. 616.

These constitutional safeguards would be deprived of a large part of their value if they could be invoked only for preventing the obtaining of such evidence, and not for protection against its use. The cases cited show that they cover the use of papers for testimony when it would be a carrying out of their violation. *United States* v. *Wong Quong Wong*, 94 Fed. Rep. 832. *State* v. *Sheridan* (Iowa), 96 N. W. Rep. 730; *State* v. *Slamon*, 73 Vermont, 212.

While it is generally considered immaterial how a paper passes into the possession of one offering it in evidence, this rule is subject to another rule which is applicable that when a party invokes the constitutional right of freedom from unlawful search and seizure, the court will take notice of the question and determine it. *State* v. *Slamon, supra ;* and for other cases holding analogous views, see *In re Jackson*, 96 U. S. 727; *In re Pacific Railway Commission*, 32 Fed. Rep. 241; *Hoover* v. *McChesney*, 81 Fed. Rep. 472.

Where a person is accused of crime, and could not himself be compelled to produce his private papers and books as evidence against himself, either by subpoena or other legal process, the fact that he has been divested of his possession wrongfully and unlawfully does not prevent him from urging the protection afforded by the constitutional provision against unreasonable searches and seizures. Cooley's Const. Lim. (6th ed.) 370.

The cases relied on by the people and cited in the opinion of the lower court are not in point. In most cases the evidence admitted was part of the *res gestæ*. A trial and conviction in an unconstitutional way is as violative of a defendant's constitutional rights as a trial and conviction under an unconstitutional law. *Ex parte Neilsen*, 131 U. S. 176.

The provisions of the penal code are wholly arbitrary, because they make an entirely innocent act a highly penal offense which the legislature has not the power to do. *People* v. *Gillson,* 109 N. Y. 389; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Marx,* 99 N. Y. 377; *People* v. *Arensberg,* 103 N. Y. 388; *Forster* v. *Scott,* 136 N. Y. 577. As to construction of this statute, see *People ex rel. &c.* v. *Flynn,* 72 App. Div. 67.

The presumption of guilt created by the statute thus eliminates all question of criminal intent, which, it would seem, is a necessary ingredient of the offense under sec. 344*a*. *United States* v. *Carll,* 105 U. S. 611.

An act which is not an offense against the New York laws, nor punishable by the New York laws, is made presumptive evidence of an offense against and punishable by such laws which is improper. *State* v. *Beswick,* 13 R. I. 211; *Wynehamer* v. *The People,* 13 N. Y. 378; *State* v. *Kartz,* 13 R. I. 328. It is like a bill of attainder. *Cummings* v. *Missouri,* 71 U. S. 277; *Green* v. *Shumway,* 39 N. Y. 418.

*Mr. Howard S. Gans,* with whom *Mr. William Travers Jerome* was on the brief, for defendants in error:

The admission in evidence of the defendant's private papers does not present a Federal question, even though it be assumed that it involved an unreasonable search or seizure, or that it compelled the defendant to become a witness against himself in a criminal case.

The Fourth and Fifth Amendments to the Federal Constitution do not *ex proprio vigore* operate as limitations upon the powers of the several States, and nothing therein contained would affect the validity of a state statute compelling a person to be a witness against himself in a criminal case, or avowedly authorizing unreasonable searches and seizures. *Thorington* v. *Montgomery,* 147 U. S. 490, 492; *Brown* v. *New Jersey,* 175 U. S. 172, p. 174; *Maxwell* v. *Dow,* 176 U. S. 581.

The Fourteenth Amendment has not changed radically the relation of the Federal Government to that of the States and to the people, or extended to the state governments the restric-

tions imposed upon the power of the Federal Government by the first ten amendments. *Hurtado* v. *California*, 110 U. S. 516; *In re Kemmler*, 136 U. S. 436, 448; *Maxwell* v. *Dow*, 176 U. S. 581.

Even if the provisions of the Federal Constitution prohibited the State of New York to authorize an unreasonable search or seizure, or to compel a person to be a witness against himself. in a criminal case, the reception in evidence of the papers so seized would not constitute an invasion of the rights thus guaranteed.

It was lawful to seize and introduce in evidence against the defendant the manifold sheets themselves, and this neither constituted an unreasonable search nor compelled the defendant to be a witness against himself. *Boyd* v. *United States*, 116 U. S. 616, 623; *Lawton* v. *Steele*, 152 U. S. 133, 140. The constitutional provision which exempts a person from the obligation of becoming a witness against himself in a criminal case is not to be extended so as to prevent the use of papers or documents forcibly taken from his possession which may tend to assist in his conviction of crime. *People* v. *Gardner*, 144 N. Y. 119; *People* v. *Van Wormer*, 175 N. Y. 188, 195.

The law does not concern itself with the method whereby a criminal is brought to the bar, or, with some slight exceptions, with the means whereby evidence against him has been obtained. Greenleaf on Evidence, vol. 1, sec. 254a; *Gindrat* v. *People*, 138 Illinois, 103; *Commonwealth* v. *Tibbetts*, 157 Massachusetts, 519; *State* v. *Van Tassel*, 103 Iowa, 6; *Chastang* v. *State*, 83 Alabama, 29; *Starchman* v. *State*, 62 Arkansas, 538; *State* v. *Flynn*, 36 N. H. 64; *Shields* v. *State*, 104 Alabama, 35; *State* v. *Atkinson*, 40 S. Car. 363; *Williams* v. *State*, 100 Georgia, 511; *State* v. *Kaub*, 15 Mo. App. 433; *Ruloff* v. *People*, 45 N. Y. 213; *Ker* v. *Illinois*, 119 U. S. 436; *Mahon* v. *Justice*, 127 U. S. 700, 708.

Section 344a of the Penal Code is not in conflict with any of the provisions of the Fourteenth Amendment to the Federal Constitution. *Lottery Case*, 188 U. S. 321, 356.

The power of the State in furtherance of a public purpose to declare criminal even that which in itself is innocent, and

to prohibit the possession of even a useful article is settled beyond question. The mere possession of fish or game or of the instrumentalities for their destruction may be prescribed and affected with criminal consequences. *Phelps* v. *Racy*, 60 N. Y. 10 ; *People* v. *Buffalo Fish Co.*, 164 N. Y. 93 ; *Lawton* v. *Steele*, 152 U. S. 133, at p. 143 ; *Geer* v. *Connecticut*, 161 U. S. 519.

*A fortiori* as to the power of the State to prohibit the possession of instrumentalities of gambling, or other noxious pursuits. *Stone* v. *Mississippi*, 101 U. S. 814 ; *Douglas* v. *Kentucky*, 168 U. S. 488.

The provisions of 344*b* making proof of possession *prima facie* proof that the possession was conscious is constitutional.

The legislature may enact that when certain facts have been proved, they shall be *prima facie* evidence of the existence of the main fact in question, provided the inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary or wholly unreasonable, unnatural or extraordinary. The connection between the fact proven and the fact in issue need not be that of inevitable inference, nor need the fact inferred be one which is within the exclusive knowledge of the person against whom the inference is drawn. *People* v. *Cannon*, 139 N. Y. 32 ; Cooley's Const. Lim. pp. 367, 369 ; *State* v. *Cunningham*, 25 Connecticut, 195 ; *Wooten* v. *Florida*, 1 L. R. A. 819 ; *Com.* v. *Williams*, 6 Gray (72 Mass.), 1 ; *State* v. *Hurley*, 54 Maine, 562 ; *State* v. *Higgins*, 13 R. I. 330 ; *State* v. *Mellor*, 13 R. I. 666, 669 ; *Com.* v. *Kelly*, 10 Cush. (64 Mass.) 69 ; *Com.* v. *Tuttle*, 12 Cush. 502 ; *Meadowcroft* v. *People*, 163 Illinois, 56 ; *State* v. *Buck*, 120 Missouri, 479 ; *State* v. *Beach*, 36 L. R. A. 179 *Morgan* v. *State*, 117 Indiana, 569.

The Federal Criminal Code includes numerous *prima facie* evidence provisions similar to the one here under discussion. See § 3082, Rev. Stat. as to effect of presumptions in regard of possession of smuggled goods. *Tilley* v. *Savannah Ry. Co.*, 5 Fed. Rep. 641, 659.

It is within the acknowledged power of every legislature to prescribe the evidence which shall be received, and the

effect of that evidence in the courts of its own government. *Fong Yue Ting* v. *United States*, 149 U. S. 698, 729 ; *Marks* v. *Hanthorn*, 148 U. S. 172, 182 ; *Pillow* v. *Roberts*, 13 How. 472, 476 ; *Ogden* v. *Saunders*, 12 Wheat. 212, 348.

Section 344*b* is not class legislation because it applies a different rule to public officers. *People* v. *Cannon*, 139 N. Y. 32 ; *People* v. *Stedeker*, 175 N. Y. 57 ; *People* v. *Noelke*, 29 Hun, 461, 466 ; *S. C.*, affirmed 94 N. Y. 137.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

We do not feel called upon to discuss the contention that the Fourteenth Amendment has made the provisions of the Fourth and Fifth Amendments to the Constitution of the United States, so far as they relate to the right of the people to be secure against unreasonable searches and seizures and protect them against being compelled to testify in a criminal case against themselves, privileges and immunities of citizens of the United States of which they may not be deprived by the action of the States. An examination of this record convinces us that there has been no violation of these constitutional restrictions, either in an unreasonable search or seizure, or in compelling the plaintiff in error to testify against himself.

No objection was taken at the trial to the introduction of the testimony of the officers holding the search warrant as to the seizure of the policy slips ; the objection raised was to receiving in evidence certain private papers. These papers became important as tending to show the custody by the plaintiff in error, with knowledge, of the policy slips. The question was not made in the attempt to resist an unlawful seizure of the private papers of the plaintiff in error, but arose upon objection to the introduction of testimony clearly competent as tending to establish the guilt of the accused of the offense charged. In such cases the weight of authority as well as reason limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained. The rule is thus laid down in Greenleaf, vol. 1, sec. 254*a*:

" It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

The author is supported by numerous cases. Of them, perhaps the leading one is *Commonwealth* v. *Dana*, 2 Met. (Mass.) 329, in which the opinion was given by Mr. Justice Wilde, in the course of which he said :

" There is another conclusive answer to all these objections. Admitting that the lottery tickets and material were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done ; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence the court can take no notice how they were obtained, whether lawfully or unlawfully ; nor would they form a collateral issue to determine that question. This point was decided in the cases of *Leggatt* v. *Tallervey*, 14 East, 302, and *Jordan* v. *Lewis*, 14 East, 306 note, and we are entirely satisfied that the principle on which these cases were decided is sound and well established."

This principle has been repeatedly affirmed in subsequent cases by the Supreme Judicial Court of Massachusetts, among others *Commonwealth* v. *Tibbetts*, 157 Massachusetts, 519. In that case a police officer, armed with a search warrant calling for a search for intoxicating liquors upon the premises of the defendant's husband, took two letters which he found at the time. Of the competency of this testimony the court said :

" But two points have been argued. The first is that the criminatory articles and letters found by the officer in the defendant's possession were not admissible in evidence, because

the officer had no warrant to search for them, and his only authority was under a warrant to search her husband's premises for intoxicating liquors. The defendant contends that under such circumstances the finding of criminatory articles or papers can only be proved when by express provision of statute the possession of them is itself made criminal. This ground of distinction is untenable. Evidence which is pertinent to the issue is admissible, although it may have been procured in an irregular or even in an illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent." *Commonwealth* v. *Acton*, 165 Massachusetts, 11; *Commonwealth* v. *Smith*, 166 Massachusetts, 370.

To the same effect are *Chastang* v. *State*, 83 Alabama, 29; *State* v. *Flynn*, 36 N. H. 64. In the latter case it was held: "Evidence obtained by means of a search warrant is not inadmissible, either upon the ground that it is in the nature of admissions made under duress, or that it is evidence which the defendant has been compelled to furnish against himself, or on the ground that the evidence has been unfairly or illegally obtained, even if it appears that the search warrant was illegally issued." *State* v. *Edwards*, 51 W. Va. 220; *Shields* v. *State*, 104 Alabama, 35; *Bacon* v. *United States*, 97 Fed. Rep. 35; *State* v. *Atkinson*, 40 S. Car. 363; *Williams* v. *State*, 100 Georgia, 511; *State* v. *Pomeroy*, 130 Missouri, 489; *Gindrat* v. *The People*, 138 Illinois, 103; *Trask* v. *The People*, 151 Illinois, 523; *Starchman* v. *State*, 62 Arkansas, 538.

In this court it has been held that if a person is brought within the jurisdiction of one State from another, or from a foreign country, by the unlawful use of force, which would render the officer liable to a civil action or in a criminal proceeding because of the forcible abduction, such fact would not prevent the trial of the person thus abducted in the State wherein he had committed an offence. *Ker* v. *Illinois*, 119 U. S. 436; *Mahon* v. *Justice*, 127 U. S. 700. The case most relied upon in argument by plaintiff in error is the leading one

of *Boyd* v. *United States*, 116 U. S. 616.    In that case a sec-
tion of the customs and revenue laws of the United States au-
thorized the court in revenue cases, on motion of the govern-
ment's attorney, to require the production by the defendant of
certain books, records and papers in court, otherwise the alle-
gation of the government's attorney as to their contents to be
taken as true.    It was held that the act was unconstitutional
and void as applied to a suit for a penalty or a forfeiture of
the party's goods.    The case has been frequently cited by this
court and we have no wish to detract from its authority.. That
case presents the question whether one can be compelled to
produce his books and papers in a suit which seeks the forfei-
ture of his estate on pain of having the statements of govern-
ment's counsel as to the contents thereof taken as true and
used as testimony for the government.    The court held in an
opinion by Mr. Justice Bradley that such procedure was in
violation of both the Fourth and Fifth Amendments; the
Chief Justice and Justice Miller held that the compulsory pro-
duction of such documents did not come within the terms of
the Fourth Amendment as an unreasonable search or seizure,
but concurred with the majority in holding that the law was
in violation of the Fifth Amendment.    This case has been cited
and distinguished in many of the cases from the state courts
which we have had occasion to examine.

. The Supreme Court of the State of New York, before which
the defendant was tried, was not called upon to issue process
or make any order calling for the production of the private
papers of the accused, nor was there any question presented
as to the liability of the officer for the wrongful seizure, or of
the plaintiff in error's right to resist with force the unlawful
conduct of the officer, but the question solely was, were the
papers found in the execution of the search warrant, which
had a legal purpose in the attempt to find gambling parapher-
nalia, 'competent evidence against the accused?    We think
there was no violation of the constitutional guaranty of privi-
lege from unlawful search or seizure in the admission of this
testimony.    Nor do we think the accused was compelled to
incriminate himself.    He did not take the witness stand in his

own behalf, as was his privilege under the laws of the State of New York. He was not compelled to testify concerning the papers or make any admission about them.

The origin of these amendments is elaborately considered in Mr. Justice Bradley's opinion in the *Boyd* case, *supra*. The security intended to be guaranteed by the Fourth Amendment against wrongful search and seizures is designed to prevent violations of private security in person and property and unlawful invasion of the sanctity of the home of the citizen by officers of the law, acting under legislative or judicial sanction, and to give remedy against such usurpations when attempted. But the English and nearly all of the American cases have declined to extend this doctrine to the extent of excluding testimony which has been obtained by such means, if it is otherwise competent. In Boyd's case the law held unconstitutional, virtually compelled the defendant to furnish testimony against himself in a suit to forfeit his estate, and ran counter to both the Fourth and Fifth Amendments. The right to issue a search warrant to discover stolen property or the means of committing crimes, is too long established to require discussion. The right of seizure of lottery tickets and gambling devices, such as policy slips, under such warrants, requires no argument to sustain it at this day. But the contention is that, if in the search for the instruments of crime, other papers are taken, the same may not be given in evidence. As an illustration, if a search warrant is issued for stolen property and burglars' tools be discovered and seized, they are to be excluded from testimony by force of these amendments. We think they were never intended to have that effect, but are rather designed to protect against compulsory testimony from a defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen or the unwarranted seizure of his papers and property, and to render invalid legislation or judicial procedure having such effect.

It is further urged that the law of the State of New York, Penal Code, § 344*b*, which makes the possession by persons other than a public officer of papers or documents, being the record of chances or slips in what is commonly known as

policy, or policy slips, or the possession of any paper, print or writing commonly used in playing or promoting the game of policy, presumption of possession thereof knowingly in violation of section 344a, is a violation of the Fourteenth Amendment to the Constitution of the United States in that it deprives a citizen of his liberty and property without due process of law. We fail to perceive any force in this argument. The policy slips are property of an unusual character and not likely, particularly in large quantities, to be found in the possession of innocent parties. Like other gambling paraphernalia, their possession indicates their use or intended use, and may well raise some inference against their possessor in the absence of explanation. Such is the effect of this statute. Innocent persons would have no trouble in explaining the possession of these tickets, and in any event the possession is only *prima facie* evidence, and the party is permitted to produce such testimony as will show the truth concerning the possession of the slips. Furthermore, it is within the established power of the State to prescribe the evidence which is to be received in the courts of its own government. *Fong Yue Ting* v. *United States*, 149 U. S. 698, 729.

It is argued, lastly, that section 344b, is unconstitutional because the possession of the policy tickets is presumptive evidence against all except public officers, and it is urged that public officials, from the governor to notaries public, would thus be excluded from the terms of the law which apply to all non-official persons. This provision was evidently put into the statute for the purpose of excluding the presumption raised by possession where such tickets or slips are seized and are in the custody of officers of the law. This was the construction given to the act by the New York courts, and is the only one consistent with its purposes. The construction suggested would lead to a manifest absurdity, which has not received, and is not likely to receive, judicial sanction. We find nothing in the record before us to warrant a reversal of the conclusions reached in the New York Court of Appeals, and its

*Judgment will be affirmed.*