# UNITED STATES

*v.*

# MANUEL CERECEDO ET AL.

San Juan, Criminal, No. 553.

ON OBJECTION TO PAPERS AS EVIDENCE.

Constitutional Law—Fourth and Fifth Amendments to the Constitution.
1. The 4th and 5th Amendments to the Constitution of the United States, being a part of the Bill of Rights, apply to people residing in territory annexed to the United States.

Same—Spaniards.
2. All privileges of citizens are not extended to foreigners, but under the treaty of Paris, by which Porto Rico was annexed, the above provisions of the Bill of Rights apply to Spaniards in Porto Rico.

United States v. Cerecedo.

Constitutional Law—Defendant's Papers.

    3. The court will not stop a trial in order to hear a collateral issue as to the source of the testimony offered.

Same—Procedure.

    4. Where a defendant's papers have been improperly seized, the court will order them returned upon his making a proper application outside of the case in which it is proposed to use them in evidence.

Same—Procedure.

    5. The court would have power to compel the district attorney to return papers in a proper case, but this will not be exercised if invoked merely by objection to evidence when the papers are offered in the main suit. In the shape so presented, the question does not raise a constitutional question, but merely one of orderly procedure.

Opinion filed March 17, 1914.

*Mr. W. N. Landers,* United States Attorney, for the government.

*Mr. Martin Travieso, Jr.,* for defendants.

HAMILTON, Judge, delivered the following opinion:

At the close of the day yesterday, certain testimony was offered, some paper,—I do not know that the nature of it was stated, but a paper which was secured on the search of the premises of the defendants, or one of the defendants, Cerecedo, —and the defendant objected to its going in evidence. The matter was argued and the court held it up for decision. I would like to pass upon the point now. It is an important one.

The exact question is this,—it really does not affect the jury,

United States v. Cerecedo.

but there is no reason why they should not hear it. There was a search warrant issued to find lottery tickets. That was executed, and in the course of the search lottery tickets are said to have been found. The testimony is that lottery tickets were found, and also some other matter, papers of different sorts, and one of these is now sought to be introduced; and that is what the objection is to. This brings up several questions, and the court has examined them with a great deal of interest after the full argument that was had. The objection is made that these papers are not admissible because of the 4th and 5th Amendments to the United States Constitution. The 4th forbids unreasonable search. It is just as well to read the text,—Amendment IV. "The right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The 5th Amendment, so far as relates to this case, is: "Nor shall [any person] be compelled in any criminal case to be a witness against himself."

1. The 4th Amendment applies to searches and the 5th to being a witness. The Supreme Court has held that being a witness covers the use of papers that are found; that if a person's papers are taken and used against him, it is in effect making him a witness against himself. The first question that would have to be settled would be this: Do these amendments apply to Porto Rico? It is a very interesting question. Porto Rico for many purposes, under the Porto Rico act, is treated as a state, and yet of course technically it is not a state. Tech-

VI. Porto Rico—39.

United States v. Cerecedo.

nically it is perhaps what would be called an unincorporated territory, and the question is, Do these Amendments apply to such a territory? This seems to be settled in the case of Hawaii v. Mankichi, 190 U. S. 197, 47 L. ed. 1016, 23 Sup. Ct. Rep. 787, 12 Am. Crim. Rep. 465, by a divided court. The decision of the court is that the Constitution of the United States may be extended to possessions of the United States outside the mainland by an Act of Congress. The dissenting opinions point out that it is a strange situation that the Congress of the United States, which is created by the Constitution itself, shall have the power of extending or not extending the Constitution to other places; but it is the decision of the majority, and is law. And the court went on to hold that the Constitution was extended by the organic act of Hawaii to Hawaii so far as not locally inapplicable. For instance, the question in that case was as to grand juries. It held that that was not immediately applicable. Under the decision, this court will hold that these two Amendments do apply to Porto Rico, although, unlike Hawaii, it is not in its organic act called technically a territory.

There are two of the first seven or eight Amendments which were added immediately after the adoption of the Constitution of the United States as a Bill of Rights to protect the people against action largely of the Federal authorities, and they are spoken of as the Bill of Rights of the United States. And it would be a decision which this court would never make, that a territory can be annexed to the United States and the Bill of Rights itself not apply. That would be abhorrent to every idea of our civilization. The United States does not acquire territory except to make people equally free with Americans themselves. Of course the method of exercising some of those

privileges is a matter for the political government, and not for this court, but so far as the Bill of Rights is concerned, this court holds that the Constitution does apply, and that these two Amendments embrace Porto Rico.

2. There is another question, however,—Do these Amendments in applying to Porto Rico apply to Spaniards? If I understand correctly, the defendants, or at least one of them, is a Spaniard. It is perfectly true that all the privileges of citizens are not extended to foreigners. The treaty of Paris [30 Stat. at L. 1760] throws light upon the manner in which Porto Rico was annexed. Art. 11 is: "The Spaniards residing in the territories over which Spain by this treaty cedes or relinquishes her sovereignty shall be subject in matters civil as well as criminal to the jurisdiction of the courts of the country wherein they reside, pursuant to the ordinary laws governing the same; and they shall have the right to appear before such courts, and to pursue the same course as citizens of the country to which the courts belong." The court will hold that under this article Spaniards have the same rights, so far as relates to the Bill of Rights contained in these two sections, that apply to Americans.

3. Supposing that settled, the main question in the case is this: Does the procedure by which these papers were acquired violate the 4th and 5th Amendments to the Constitution under the circumstances of this particular case? It is a question not without difficulty, and possibly I had better take up several elements of it in succession. It has been held by the Supreme Court of the United States in a number of cases (Adams v. New York, 192 U. S. 585, 48 L. ed. 575, 24 Sup. Ct. Rep. 372, for instance, and the same thing has been elaborated in

United States v. Cerecedo.

136 Am. St. Rep. p. 129) that a court will not stop a trial
in order to hear a collateral issue; that evidence brought be-
fore it, a paper brought before it, which is germane to the
issue, will be admitted regardless of how it is obtained.    In
other words, it is not where the paper comes from, but the na-
ture of the paper itself, which determines its admissibility.
This has been the law for a long time.

4. The effect of a recent decision, however, is to be con-
sidered.    The defendant says that in Weeks v. United States,
232 U. S. 383, 58 L. ed. 652, 34 Sup. Ct. Rep. 341 (just de-
cided, last month, Feb. 24th), a different principle is an-
nounced.    It is contended that this case modifies the preceding
cases, the Adams Case and others.    The Weeks Case is from
Kansas City, and related to the seizure of lottery material.
There, in the district court before the case was called for trial,
the defendant filed a petition setting up that papers had been
seized illegally, and asking their return.    The court granted
this as to certain matters.    As to some papers that were going
to be used on the trial, which were germane to the trial, it re-
fused the petition, but as to all other papers it granted the
petition.    The case went to the Supreme Court of the United
States, and that court declared the court below had erred; that
all papers should have been returned; that they were obtained
by an unlawful seizure, there being no search warrant in that
case, the police simply exercising their right, or their power at
all events, of taking papers.    And this, as I understand, is what
the defendant relies upon in this case.

The case of Boyd v. United States, 116 U. S. 616, 29 L. ed.
746, 6 Sup. Ct. Rep. 524, throws considerable light upon the

United States v. Cerecedo.

question. That was decided by Mr. Justice Bradley, one of the most eminent judges ever on the Supreme Court, and he goes into the origin of these two amendments, and traces them back to the days of Lord Camden, in the case of Entick v. Carrington, 19 How. St. Tr. 1029, where it was decided that there could be no such search; that a man's house is his castle. And the Supreme Court through Justice Bradley declares that this principle is adopted into the Bill of Rights by Amendments 4 and 5. There is no question about that. There is no question as to the meaning of the 4th and 5th Amendments. The only question is as to how and when to carry out the right in question. The defendant in this case concedes that so far as lottery tickets, for instance, are mentioned in the affidavit for the search warrant and in the search warrant, the police were within their rights in seizing those particular papers; and the motion at present made has no relation to these at all. The objection relates to papers which were not named in the affidavit and were not named in the search warrant, and the point claimed is that, as to those particular papers, the police were without any jurisdiction at all; that they were not protected by a search warrant; that it was the same as if they had gone there without a search warrant. I am not using the words of the argument, but I think that this is the point.

5. In the view the court takes of it, it is unnecessary to determine this particular point. It is to my mind a question of procedure, and not of constitutional right in this case. Any matter has to be brought up in some orderly manner, and the court thinks that the principles heretofore declared would govern this case. It is true that the court has control over the

district attorney, and upon proper process, whatever it might be, served upon the district attorney or the marshal or any other officer, the court would have the power to direct that the papers be returned. That seems to be decided also in Wise v. Henkel, 220 U. S. 556, 55 L. ed. 581, 31 Sup. Ct. Rep. 599, but this is not that case. There is no petition filed in this court addressed to the judge for any purpose, either during the trial of the case or before the trial of the case. And the court therefore feels without power to take any action in the premises. If a petition had been filed in this court before the case was called, asking that the district attorney be directed to turn over certain papers, it would present a case analogous to the Weeks Case. Of course the court does not undertake to say whether it would or would not grant it; but all that appears in this case is that a statement is made that a demand has been made upon the district attorney out of court, and the district attorney says that he is not called upon to answer it, and does not answer it one way or the other. The proper procedure is for some action of the court to be requested before the trial of the main case. Otherwise it amounts to interrupting the orderly conduct of one case in order to try a collateral issue,—the same point which has been denied in several cases already mentioned. For these reasons, therefore, the objection is overruled.