## PROSECUTION FOR BEING A KNOWN GAMBLER.

Court of Appeals for Hamilton County.

SAMUEL HIRSCH v. CITY OF CINCINNATI.*

Decided, March 15, 1915.

*Criminal Law—Admissibility of Papers Taken by Officers on Occasion of the Arrest—Weight of Evidence Where it is All Given by Persons of a Single Class.*

1. In a prosecution for being a known gambler, papers, race horse slips and telegrams found at the time of arrest lying on the desk of the defendant by the arresting officers are competent in support of the charge pending against him, on the same principle that incriminating tools found on the person of one charged with burglary, or counterfeiting devices found in possession of one charged with counterfeiting, are admissible in evidence though not necessary for conviction nor sufficient when solely relied upon to warrant conviction.

2. The fact that the evidence introduced against one charged with being a known gambler was confined to persons of a single class, to-wit, members of the police department, is a matter which affects the weight of the evidence only, and where evidence so proffered was permitted to stand unchallenged, and no evidence was offered by the defendant, a finding of guilty will not be disturbed by a reviewing court.

*James S. Myers,* for plaintiff in error.

*Walter M. Schoenle,* City Solicitor, and *Edwin S. Morrissey,* Municipal Court Prosecutor, contra.

JONES (E. H.), P. J.; JONES (Oliver B.), J., and GORMAN, J., concur.

Plaintiff in error was convicted as a "known gambler" in the municipal court of Cincinnati, under the provisions of Section 908 of the city ordinances, which reads as follows:

"That if any known pickpocket, gambler, burglar, thief, watch stuffer, ball game player, or person who practices any trick game

*Motion for leave to file a petition in error and to direct the Court of Appeals to certify its record overruled by the Supreme Court May 11, 1915

or device with intent to swindle or any suspicious person who can not give a reasonable account of himself, shall be found in the city of Cincinnati, such person shall on conviction thereof in the police court, for each and every offense be fined in any sum not less than five ($5) dollars or more than fifty ($50) dollars.''

Upon proceedings in error in the common pleas court the judgment in the municipal court was affirmed, and this proceeding is prosecuted to reverse the judgment of affirmance of the common pleas court.

The errors complained of in argument can be embraced under two heads: first, it is claimed that the judgment should be reversed because the municipal court erred in admitting evidence in the form of papers, race horse slips, telegrams, etc., which were taken off the desk of plaintiff in error at the time of his arrest; and, second, it is claimed that the judgment is not supported by sufficient evidence in that the only evidence as to the reputation of Mr. Hirsch as a gambler or otherwise, and the only evidence in support of the allegation of the warrant that he was at the time a ''known gambler,'' came from police officers; and further, that their evidence showed that their information was obtained wholly from other members of the police department.

As to the first ground of error several authorities were cited in support of the doctrine that papers obtained by means of unreasonable or unlawful search or seizure of the house or premises of a person can not be used as incriminating evidence against him. Of all the cases cited the one most directly in point and apparently most strongly relied upon is that of *Boyd* v. *United States,* 116 U. S., 616. In that case the question to be determined by the court is thus stated in the opinion by Mr. Justice Bradley:

''In a search or seizure, or what is equivalent thereto, a compulsory production of a man's private papers, to be used in evidence against him in a proceeding to forfeit his property for alleged fraud against the revenue laws—is such a proceeding for such a purpose an 'unreasonable search and seizure' within the meaning of the Fourth Amendment of the Constitution?''

The court answered this question in the syllabus of the case as follows:

"The seizure or compulsory production of a man's private papers to be used in evidence against him is equivalent to compelling him to be a witness against himself, and in a prosecution for a crime, penalty or forfeiture, is equally within the prohibition of the fifth amendment."

The opinion of Justice Bradley in this case is quite lengthy, and is followed by a concurring opinion of Mr. Justice Miller some three pages in length. This case was brought by the United States authorities to establish a forfeiture of certain goods alleged to have been fraudulently imported without paying duties thereon. It appears from the facts in the case as stated in the opinion, that at the hearing or shortly prior thereto an order was made by the court upon the owner of the goods to produce for the inspection of the court certain papers and that in executing that order the officers made a forcible search and seizure of certain premises and thereby secured the papers desired. Upon the trial of the case, an objection being made thereto, these papers were excluded from evidence because of the manner in which they were obtained. In the concurring opinion, on page 639, Justice Miller says:

"The order of the court under the statute is in effect a subpoena *duces tecum,* and though the penalty for witness' failure to appear in court with the criminating papers is not fine and imprisonment, it is one which may be made more severe, namely, to have charges against him of a criminal nature, taken for confessed and made the foundation of the judgment of the court That this is within the protection which the Constitution intended against compelling a person to be a witness against himself, is, I think, quite clear.

"But this being so, there is no reason why this court should assume that the action of the court below, in requiring a party to produce certain papers as evidence on the trial, authorizes an unreasonable search or seizure of the house, papers or effects of that party."

So it would seem from the language of the court, that acting under authority of the order of court requiring a party to a suit

to produce certain papers at the trial as evidence, the officers attempted to and did procure possession of said papers by force and by search "or seizure" of the house, papers or effects of that party.

There is such a statute in our own as well as in many other states requiring the production of papers to be used as evidence, but we have never known of a case where it was even claimed that under an order made in conformity to such statute forcible entry, search and seizure of property or effects could be made; And it would seem most fair and reasonable for a court to hold that evidence secured in such unlawful manner could not be admitted against its proper custodian in an action to enforce a penalty or fasten a crime upon him.

In the case of Mr. Hirsch these papers, wager slips, telegrams, etc., which were introduced in evidence were taken off his desk at the time that the officers walked into his office and arrested him. They had no warrant for him. Upon that day or the following day an affidavit was made aginst him charging him with the offense of being a "known gambler" found in the city of Cincinnati. A successful prosecution for this offense does not depend upon proof of particular acts of gambling. The offense is proven if it is shown to the court beyond a reasonable doubt that the accused is a "known gambler"—that is, if it can be proven that such is his general reputation in the community.

As said by our Supreme Court in the case of *Morgan* v. *Nolte,* 37 O. S., 23, at page 26:

"In such cases the offense does not consist of particular acts, but in the mode of life, the habits and practices of the accused in respect to the character or traits which it is the object of the statute creating the offense to suppress."

The result of the prosecution depended therefore not upon evidence of particular acts, but upon the general reputation as to the mode of life and pursuits of the defendant. The papers taken by the officers on the occasion of the arrest were not necessary to a conviction, as the city is not required to produce any evidence of particular acts of gambling. But such evidence was competent and admissible in the same manner and upon the same

principle that incriminating tools found upon the person of one charged with burglary, or counterfeiting devices found in the possession of one charged with such crime may be properly admitted in evidence, although not necessary for his conviction nor sufficient when solely relied upon to warrant conviction. This defendant at the time of his arrest was "found in the city of Cincinnati." Under the ordinance it was an offense for a "known gambler" to be found in the city of Cincinnati. That was a crime in itself, in order to prove which it would not be necessary to show that he had ever been guilty of any gambling in the city. In other words, it was only necessary, for a conviction as stated above, to show that he was in Cincinnati and was known as a gambler. There was no violation of his rights in the act of taking the papers in question, and said papers were competent and admissible as evidence not of any particular act or acts of gambling but of the charge made against him, namely, that he was a known gambler.

In the case of *Adams* v. *New York,* 192 U. S., 585, it is held:

"The fact that papers, which are pertinent to the issue, may have been illegally taken from the possession of the party against whom they are offered is not a valid objection to their admissibility. The court considers the competency of the evidence and not the method by which it was obtained."

It will be noted that the papers referred to had been *illegally* taken from the possession of the party and the court held that even so, it considered only the competency of the evidence and not the method by which it was obtained. It appears that the papers objected to as evidence by counsel for Adams were taken at the time of his arrest and "had no relation whatsoever to the game of policy" which he was prosecuted for playing or operating. It seems from reading the opinion in the case that there was no exception taken to the admission of the policy slips and policy paraphernalia taken at the time of the arrest. The holding of the court with reference to private papers taken forcibly from the accused leaves no doubt as to its view on the admissibility of the papers directly connected with the crime charged in the indictment.

This Adams case was distinguished in a later case by the Supreme Court of the United States, where it was held:

"While an incidental seizure of incriminating papers made in the execution of a legal warrant, and their use as evidence may be justified, and a collateral issue will not be raised to ascertain the source of competent evidence. *Adams* v. *New York,* 192 U. S., 585, that rule does not justify the retention of letters seized in violation of the protection given by the Fourth Amendment where an application in the cause for their return has been made by the accused before trial. *Weeks* v. *U. S.,* 232 U. S., 383."

It will be noted that both the Adams and Weeks cases have to do with private papers, and it is the taking of such papers not bearing directly upon the crime that is discussed and considered. The conclusion must be drawn from these two cases that they leave no room for doubt as to the admissibility of the incriminating papers relating to the offense, taken from Hirsch's desk at the time of his arrest.

The main evidence, however, upon the question of his being a known gambler, was the oral testimony of the witnesses called by the prosecution, who were members of the police department. This brings us to a consideration of the second error complained of for which reversal is asked, *i. e.,* that this evidence was insufficient for the reason that it was confined to a class of persons and therefore can not be received as evidence of general reputation. Gambling is generally recognized and legislated against as a crime in all cities, and it is peculiarly within the province of the police department and its members to know where and by whom gambling is being conducted and carried on. The officers called in this case, upon direct examination testified unequivocally that the defendant was known to them as a gambler, and upon cross-examination stated that they had heard others so speak of him, although it is true that all of them testified that "the others" who had so spoken were mainly members of the police force or men connected with it in some capacity. The fact that the source of evidence was thus confined to a class may have affected its weight as showing the general reputation of the accused, but such fact does not affect the admissi-

bility of the evidence. The accused called no witnesses to contradict this in any way and offered no evidence to show that he was not known as a gambler. No one came forward to testify as to that on his behalf. He subpoenaed no witnesses; offered no evidence to show by any one of his numerous acquaintances in the city of his residence that he was not known as a gambler or that he was a follower of any vocation other than that of gambling. In the absence of any such evidence, that of the witnesses produced on behalf of the state remained unchallenged and was sufficient, in our opinion, to warrant the trial judge in making a finding thereon against the defendant.

We find no error in the record of the proceedings of the trial court, and the judgment of the common pleas court in affirming the municipal court will be affirmed.