## UNITED STATES v. BLANCO.

District Court, W. D. Texas. July 7, 1928.

No. 7185.

Criminal law ⊙⟫395—Liquor secured by federal officers, notified by city officers called to premises to quell disturbance, held competent in prosecution for possession.

Where city officers, called to quell disturbance, after admission to premises discovered liquor, and thereupon communicated with federal officers, who came and took charge of liquors, pursuant to general understanding and custom among law-enforcing officers that city officers, discovering violation of federal law, would notify federal officers thereof, the evidence so secured by federal officers was not thereby inadmissible, on charge of possession of intoxicating liquor, as having been secured through the aid of city officials, acting solely for purpose of aiding in federal prosecution and without a search warrant.

Peggy Blanco was charged by information with possession of intoxicating liquor, and she moves to suppress evidence. Motion denied.

John D. Hartman, U. S. Atty., and Russell B. Wine, Asst. U. S. Atty., both of San Antonio, Tex.

Leonard Brown, of San Antonio, Tex., for defendant.

WEST, District Judge. Two city officers receive information by telephone that at a certain street number there was a disturbance. They promptly visit the place, defendant's residence, were admitted to a front room, in which were three men, one partially intoxicated, who was "taken down." One officer remains in this room; the other passes through the house, back to the kitchen, through a swinging door. Here the defendant was found in the act of mixing drinks from a bottle of gin on the table fronting her. The officer searched the kitchen and ice box, finding 32 pints of beer, 2 quarts and 1 pint of whisky, and 3¾ quarts of gin. He then phoned Prohibition Officer J. H. Beck, who came in about 20 minutes and took charge of the liquors. A general understanding and custom existed for a long time among law enforcement officers that, when city officers discovered any violations of federal law, federal officers were to be notified, passing to them the initiative of prosecution. This understanding also prevailed among state and county officers; also that federal enforcement officers give like notification to city, county, and state officers when offenses against those laws were found. The state laws against possession with intent to sell,

and manufacture, of intoxicating liquors conform generally to the federal laws, but provide severer penalties for infractions. The state prohibition laws are practically not enforced in this county.

The defendant relies upon the case of Gambino et al. v. United States, 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. —, 52 A. L. R. 1381, in the United States Supreme Court, decided December 12, 1927. The facts in that case differ materially from the facts in this. The court gives the substantial facts on which its decision in that case rests as follows:

The arrest was made by two New York state troopers, near the Canadian border. Defendants' automobile was searched without a warrant, and intoxicating liquor found therein and seized. The property seized and the defendants were immediately turned over to a federal deputy collector of customs for prosecution. A motion to suppress evidence because of seizure without probable cause was overruled; conviction followed. Judgment affirmed. The state Prohibition Act had been repealed. Laws N. Y. 1923, c. 871. The defendants were not arrested by the state troopers for violating any state law. Though in the performance of a supposed duty, their action was *solely* for the purpose of aiding in the federal prosecution.

The facts in the present case show that the city officers were acting in the performance of their duty in responding to a request that a disturbance be quieted at a particular house, and not "*solely* for the purpose of aiding in the federal prosecution." The value of the Gambino Case as a controlling authority depends upon the facts in that case. To control the law of any other case, the material facts must be substantially the same in each. The bare statement of the two points of difference in the present case with the facts in the Gambino Case is sufficient to show that the law there declared should not be applied here. For instance, if the state troopers had been acting in the enforcement of an existing state prohibition law, their action would have been in performance of their duty. In such circumstances they could not have been acting "*solely*" for the purpose of aiding in the federal prosecution. This difference in the facts would no doubt have drawn from the court in the Gambino Case a contrary conclusion of law. The court states that there is no claim that the defendants were committing any state offense. No federal official was present at the search and seizure, and the defendants made no attempt to establish that the particular search and

seizure was made in co-operation with federal officials.

The co-operation referred to by the court plainly has reference to the principal facts: (a) That the officers, in making the arrests, searches, and seizures, were not *acting* in the enforcement of any law of the state; (b) immediately following arrest and seizure, the defendants and property were turned over to federal officers; (c) ratification of these wrongful acts by the federal prosecution. The concurrence of these facts is the court's warrant for holding that there *was* such co-operation by state and federal officers, and that "the wrongful arrest, search, and seizure were made *solely* on behalf of the United States."

Defendant contends that, where an agreement of co-operation is established by a course of dealing, as in this case, the evidence wrongfully secured by officers other than federal officers is inadmissible in prosecution for federal offenses. The Gambino Case is carefully limited to its facts, as witness the following quotations:

"The conclusion here reached is not in conflict with any of the earlier decisions of this court in which evidence wrongfully secured by persons other than federal officers has been held admissible in prosecutions for federal crimes; for in none of those cases did it appear that the search and seizure was made *solely* for the purpose of aiding the United States in the enforcement of its laws."

The court is careful to reaffirm the common-law rule that physical evidence illegally taken from the possession of the party against whom it is offered is competent and admissible. Adams v. New York, 192 U. S. 585, 24 S. Ct. 372, 48 L. Ed. 575; Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. Giving emphasis to its holding that the wrongful act which brought the questioned evidence to light must have been made *solely* for the purpose of aiding in the prosecution of the federal offense, the court reaffirms Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, a case where the evidence (property) was stolen by private detectives, and is careful to point out that the federal official had nothing to do with the wrongful search and seizure or knowledge thereof until later. Continuing on the same line, the court says:

"There have been many instances in which the lower federal courts have admitted evidence obtained by state officers through wrongful search and seizure, but only three reported cases have been found in which it could have been seriously contended, in view of the law of the state and the facts appearing in the opinion, that the search and seizure had been made solely for the purpose of aiding in the enforcement of the federal law."

The court then differentiates the three cases. Limiting the court's declarations in the Gambino Case to the facts in that case, it is not an authority in defendant's favor, because the facts stipulated here show that the search and seizure by city officers was *not* made "*solely* for the purpose of aiding in the enforcement of the federal law."

Next in importance to the Gambino Case, defendant relies on United States v. Falloco, 277 F. 75, 82 (D. C. 8th Circuit), and upon the approval by the Supreme Court of that decision in Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520. In the Byars Case there was active personal participation by a federal officer jointly with city officers in an unlawful search and seizure; the seizure of counterfeit revenue stamps having been personally made by the federal officer. The court held that the active participation of the government officer was such as to constitute a joint undertaking, and render the search unlawful as a federal search. After deciding the controlling question, the court says:

"Similar questions have been presented in a variety of forms to the lower federal courts, but nothing is to be gained by attempting to review the decisions, since each of them rests, as the present case does, upon its own peculiar facts. But see and compare Flagg v. United States [C. C. A.] 233 Fed. 481, 483; United States v. Slusser [D. C.] 270 Fed. 818, 820; United States v. Falloco [D. C.] 277 Fed. 75, 82; Legman v. United States [C. C. A.] 295 Fed. 474, 476–478; Marron v. United States [C. C. A.] 8 F.(2d) 251, 259; United States v. Brown [D. C.] 8 F.(2d) 630, 631."

The Falloco Case was cited as one of a class touching like questions, but with varying facts, and not worth reviewing. This does not mean approval, in the sense that there was a judgment of approval by the Supreme Court. The Gambino Case and the Falloco Case do not declare the law of the instant case, because the facts in each are different.

The defendant argues that, though the unlawful search and seizure was made by the city officers prior to their notifying the prohibition agent, nevertheless, because of

their mutual co-operating custom and understanding, and the adoption by Beck of the case as a prohibition violation, followed by prosecution, is such a ratification of the city officers' unlawful acts as federalizes the whole transaction, constituting them government agents, thus nullifying the search and seizure as unwarranted by federal law.

The defendant does not question the good faith of the city officers in answering a call to quell a disturbance, but contends that it was no part of their duty to enter other rooms of the residence and thus discover some of the liquor seized in the possession of defendant; nor to search defendant's refrigerator and ice box in her presence, and so inform the federal officer of their find, and hold it until he arrived and took charge. On entering the house, three men are found in a front room, one of them partially intoxicated. There was no disturbance. Why should it be a departure from the line of duty for one of the officers to remain in company with the three men, and the other to look through the rooms to see what other persons were in the house, and what information he could get as to the complaint of disturbance there?

Officers experienced in the business of answering and quieting disturbances are aware that alcohol is a fruitful cause of disturbance. The partially intoxicated man meant alcohol. Find the probable causes, and exclude them from further use as disturbers, would seem to be in the line of duty. The owner or lessee of the house should be questioned concerning the charge, and detained, if found in possession of intoxicating liquor, or in the act of mixing drinks for visitors. It is unlawful to possess intoxicating liquors for sale, or for beverage purposes. This offense was committed in the presence of the officer. He was lawfully in the place where he stood. He would be derelict in his duty if he failed to look into the ice box or refrigerator in the same room. He did so, and disclosed the quantities of gin and beer mentioned, the suppression of which is the subject-matter of defendant's motion. As evidence the liquors in question would be material, should a charge be made against the defendant or the men found in her residence as disturbers of the peace; also material if a charge should be made for violation of either state or national Prohibition Acts.

An elemental requirement and obligation of citizenship is obedience to law and to report to officers violations of law. Those obligations rest on the city officers as citizens; as officers of the city the obligation is stronger, and this, too, without regard to the partial failure of enforcement of state prohibition laws. If it be the duty of the private citizen to co-operate with officers and aid in the enforcement of law, what becomes of the defendant's charge of co-operation among the officers, federal, state, county, and city, to do the same thing? The question carries its plain answer. Co-operation by custom and understanding to enforce law is a duty. Co-operation to break law is conspiracy. There is no conspiracy here.

From the foregoing, the court is of opinion that the evidence in question is competent and material to the charge against the defendant, and that the motion to suppress should be denied. An order to that effect to be entered forthwith.