## LYMAN v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. May 14, 1917.)

### No. 2746.

1. CRIMINAL LAW ⬅878(3)—SEVERAL COUNTS—ACQUITTAL—USING MAILS TO DEFRAUD.

Where an indictment for using the mails in furtherance of a scheme to defraud contained a number of counts, each charging the mailing of a letter, but on different dates, an acquittal on some of the counts does not negative the charge of having on a prior date devised the scheme to defraud, since the acquittal may have been on the sole ground that the proof failed to show the mailing of the letters by defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2100.]

2. CRIMINAL LAW ⬅395—EVIDENCE—DOCUMENTS ILLEGALLY OBTAINED.

That papers which are pertinent to the issue may have been illegally taken from the possession of the party against whom they are offered is no valid objection to their admissibility.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 877.]

3. POST OFFICE ⬅50—PROSECUTION FOR USING MAILS TO DEFRAUD.

An instruction, given on the trial of an indictment for using the mails to defraud, that, if the fraudulent intent was in the mind of the defendant before the mailing of any one of the letters mentioned in the indictment, such fraudulent intent was sufficiently established, held not erroneous.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89.]

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Olin Wellborn, Judge.

Criminal prosecution by the United States against John Grant Lyman. Judgment of conviction, and defendant brings error. Affirmed.

Paul Schenck, Joseph Citron, and Richard Kittrelle, all of Los Angeles, Cal., for plaintiff in error.

Albert Schoonover, U. S. Atty., of Los Angeles, Cal.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error was convicted under the first of six counts of an indictment charging him with using the mails of the United States in the execution of a scheme devised to defraud various persons of their property and money, and, having been sentenced to imprisonment by the judgment of the court below, has brought the case here by writ of error.

The count of the indictment under which conviction was had alleged, in substance, that on the 1st day of May, 1911, and at all other times mentioned in the indictment, the Panama Development Company was a corporation organized under the laws of Arizona, and was at all times under the complete control of the defendant; that on or about May 1, 1911, the defendant, at the city of Los Angeles, intended to devise and had devised a scheme to defraud various persons, to

---

the grand jurors unknown, out of their money and property, by inducing them through false and fraudulent representations to pay and transfer to the said corporation their money and property, in the belief that they were paying and transferring it to the corporation as agent for the republic of Panama in the purchase of lands belonging to that government, the defendant at the time well knowing and intending by means of such false representations to secure and convert to the use of the corporation and of himself a large part of such money and property, the exact amount of which being to the grand jurors unknown; that the scheme involved the organization as a corporation of the Panama Development Company by the defendant, and the advertisement by him to each and all of the persons intended to be so defrauded under and in the name of the corporation, that the latter had a paid-up capital of $50,000, some of whose officers and directors were men of prominence and connected with and employed by the Panamanian government, and that the other of such officers and directors were men of prominence elsewhere, and among its false and fraudulent representations were the following:

That the said corporation was the agent of the said government for the sale of its lands, consisting of agricultural, timber, and mineral lands in the districts of Cocle, Veragua, and Ciriqui which lands the government of that country offered for sale through the said corporation as its agent to persons desiring to purchase them on application made through the said corporation at a price varying from $3 to $5 an acre, payable one-half in cash to the corporation as such agent at the time of the making of the application and the balance of the purchase price to be paid to the corporation within four years; that upon the making of such application and first payment the corporation would immediately file the application with the government of Panama, through the representative of the corporation in that republic, and that thereupon the government would immediately make the allotment of the land so applied for to the applicant in the order that such applications were received, and would immediately issue a provisional title to the land to the applicant, and a complete title upon the full payment of the purchase price and the cultivation of four-fifths of the agricultural land; that the corporation had experts in the republic of Panama familiar with the location of the land, who could and would select the best of such lands for the persons making applications through the corporation, which corporation through such experts could select better lands for the applicants than if they were personally present in the republic; that the corporation could and would furnish maps showing the location of such lands so offered for sale, and had sold to an American colony 10,000 acres of such land situate in the district of Agua Dulce, in the province of Cocle, and had offered for sale and was selling such government lands situate in the same district upon applications made to it on the terms and conditions stated; that a railroad was being constructed from the city of Panama to the city of David in the said republic, and that the corporation was clearing and cultivating some of the government land which had theretofore been sold through it as such agent, and that it would clear and cultivate such government land so purchased through

it; that it had and offered for sale 16,000 acres of the government timber land situate in the province of Veragua, and that on August 1, 1911, the price of the government agricultural lands so offered for sale would be increased by the government to $6 an acre, and that if, at any time within two years after making application for the purchase of any of such land, the applicant was dissatisfied with his purchase, any and all money and property so paid and transferred from the applicant on such a purchase would be returned to the applicant by the corporation on demand; that each of the representations and advertisements so made were made and intended to be made as a part of the said scheme to defraud, by inducing the persons to whom they were so made to part with their money and property; that the defendant, intending and having devised the said scheme, did on the 28th day of August, 1911, at the city of Los Angeles, and within the jurisdiction of the court below, for the purpose of executing the scheme, and of defrauding and of attempting to defraud, knowingly and unlawfully placed and caused to be placed in the post office a certain letter, in substance, as follows:

"Principal Office:
    "City of Panama, Isthmus of Panama
"Surcusal:
    "City of David, Province of Chiriqui.
"President: Sr. Hernan de la Guardia.

            "Panama Development Company,

      "216 Mercantile Place, Between Fifth and Sixth Streets.

"Telephones: Broadway 1050
          "Home A 3425.

                         "Los Angeles, Aug. 28, '11.

"Mr. F. L. Anderson—Dear Sir: Yours of the 27th inst. received and contents noted. I can do as you requested for Mr. Friman. I will reserve 20 acres for him in Block 29—right next to his other land—on the same terms as he bought the other. Thanking you and Mr. Friman,
    "Yours very truly,        Panama Development Company,
                          "By E. A. Lynn."

The letters alleged to have been deposited in the post office in counts 2, 3, 4, 5, and 6, as to which counts there was a verdict of not guilty, were alleged to have been so deposited on, respectively, the 22d day of August, the 24th day of July, the 6th day of June, the 11th day of July, and the 25th day of August, 1911.

[1] One of the contentions on the part of the plaintiff in error is that, inasmuch as the jury found him not guilty as charged in counts 2, 3, 4, 5, and 6 of the indictment, "it necessarily follows that the jury believed that the defendant had not conceived an intention to defraud until at a time some time prior to the mailing of the letter set out in the first count and subsequent to the date of letter mailed next prior to the letter in the first count, which date was August 25, 1911, the date of the letter contained in the sixth count." But that is an obvious and complete non sequitur, for it may be that the jury found as a fact that the defendant had not deposited or caused to be deposited in the mail either of the letters alleged to have been so deposited in counts 2, 3, 4, 5, and 6.

As to the first count there is no claim of insufficiency of the evidence to justify the verdict; the sole points made as grounds for a reversal of the judgment being alleged error on the part of the trial count in overruling the defendant's objections to the introduction of certain letters, books, records, maps, and other papers which, it is contended, were unlawfully taken from the defendant's possession by officers of the government, and alleged error on the part of the court in giving to the jury a certain instruction.

[2] It is contended that the records and papers taken from the defendant, which it is undisputed were taken against his will and without any warrant, were in violation of the Fourth and Fifth Amendments of the Constitution of the United States, the former of which provides:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized."

And the latter providing, among other things, that a defendant shall not be "compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property without due process of law."

In the case of Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, it was adjudged, among other things, that the fact that papers which are pertinent to the issue may have been illegally taken from the possession of the party against whom they are offered is no valid objection to their admissibility; that the court considers the competency of the evidence, and not the method by which it was obtained—citing, among other authorities, with its approval, the following from Greenleaf on Evidence (volume 1, § 254a):

"It may be mentioned in this place that, though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

In the late case of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, the Supreme Court, while holding that the federal courts cannot, as against a seasonable application for their return, in a criminal prosecution, retain for the purposes of evidence the letters and correspondence of the accused, seized in his house, during his absence and without his authority, by a United States marshal holding no warrant for his arrest or for the search of his premises, still adhered to the rule laid down by it in Adams v. New York, to the effect that a collateral issue will not be raised to ascertain the source of competent evidence, although illegally obtained, where no application had been made by the accused for its return before trial.

In the present case it is not pretended that any such application was made on behalf of the plaintiff in error for the return of the records

and papers, to the introduction of which objection was made on the trial, notwithstanding they had been seized, according to the statement contained in the brief for the government, more than two years before the trial took place; and that the records and papers so offered and received in evidence strongly tended to show the alleged guilt of the defendant to the indictment is not even questioned. We therefore are of the opinion that the trial court was right in its ruling admitting the evidence complained of.

[3] Nor do we see any merit in the contention on the part of the plaintiff in error that the court erred in giving to the jury this instruction:

"Replying to the question which you have propounded to me, I instruct you that the mailing of a letter without the fraudulent intent would be no crime. If, however, the evidence satisfies you beyond a reasonable doubt that the fraudulent intent was in the mind of the defendant before the mailing of any one of the letters mentioned in the indictment, then, as to the count in which that letter is set forth, the fraudulent intent is sufficiently established."

The question of the juror, to which the foregoing was the response, was as follows:

"Juror Brownstein: We would like to be enlightened in regard to the alleged intent of the defendant to defraud. Are we to consider his intent at the time of organizing the Panama Development Company, or at the time the several letters in the indictment were written and mailed, or any subsequent time?"

The court had already instructed the jury as follows:

"The defendant in this case is charged with having placed and caused to be placed in the United States post office in the city of Los Angeles, state of California, to be sent and delivered by the post office establishment of the United States, certain letters, for the purpose of executing a scheme to defraud alleged to have been previously devised by him. This scheme is fully set forth and described in the indictment, which has been read to you, and which you will have with you in the jury room, and which, therefore, need not be recited here. The indictment contains six counts. All charge the same scheme to defraud, but each alleges the deposit in the United States mail of a letter different from those set forth in the other counts.

"To constitute the offense charged in the first count, three things are necessary: First, that the defendant devised the scheme therein described; second, that said scheme was one to defraud; third, that said defendant, for the purpose of executing said scheme, placed, or caused to be placed, in the post office at Los Angeles, California, to be sent and delivered by said post office establishment, the letter in said count described. If you are satisfied from the evidence, beyond a reasonable doubt, of the existence of the three constituents which I have enumerated, you will find the defendant guilty as charged in said first count. If, however, the evidence fails to so satisfy you of said constituents, or either of them, you will find the defendant not guilty as charged in the first count.

"The instructions which I have given you with reference to the first count apply also to the remaining five counts, except that, in order to justify a conviction on any one of said five counts, the evidence must show, besides the other elements of the offense, that the defendant placed or caused to be placed in said post office, to be sent and delivered by said post office establishment, the letter mentioned in such count.

"The court further instructs you that the rule of law applicable to criminal prosecutions for obtaining money or property by false pretenses, namely, that

the representation or pretense must be of some existing fact, and not a mere expression of opinion, or a mere promise as to the future, and that the fraudulent purpose must be something more than an intention not to carry out a promise or contract, does not apply to this case. The section of the Criminal Code under which this prosecution was brought denounces as a crime the mailing or causing to be mailed of a letter in the execution of a scheme to defraud. The evil sought to be remedied is always important in determining the meaning of a statute. It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. Eagerness to take the chances of large gains lies at the foundation of all lottery schemes, and, even when the matter of chance is eliminated, any scheme or plan which holds out the prospect of receiving more than is parted with appeals to the cupidity of all. In the light of this the statute must be read, and, so read, it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. Thus it will also be seen that one of the significant facts is the intent and purpose to defraud, without which there can be no conviction.

"The court further instructs you that, if the representations intended to be made as alleged in the indictment were false, but defendant honestly believed them true, then said representations would not be fraudulent."

We see nothing in the case of Durland v. United States, 161 U. S. 314, 16 Sup. Ct. 508, 40 L. Ed. 709, relied upon by the plaintiff in error, justifying us in holding the instruction complained of erroneous.

The judgment is affirmed.