RICE v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. June 22, 1918.)

No. 1339.

1. CRIMINAL LAW ⬡394—MATTER OF OBTAINING EVIDENCE.

Admissibility of documentary evidence tending to establish accused's guilt of using mails to defraud is not affected by the alleged fact that it was secured in violation of the constitutional prohibition against unreasonable searches and seizures, so that, where search warrant called, for two letters and four were seized, all were admissible.

2. CRIMINAL LAW ⬡442—DOCUMENTARY EVIDENCE—ADMISSIBILITY.

In prosecution for using mails to defraud, communications sent in accordance with a written threat are admissible, where papers referred to in the threat and the copy of the original threat, found in accused's safety deposit box, sufficiently connected him with the letters.

3. WITNESSES ⬡352—REPUTATION—EVIDENCE—ADMISSIBILITY.

In prosecution for using mails to defraud, where accused had testified and put in issue his good reputation and profession, his letter to the alleged paramour of the person whom he sought to defraud was admissible to refute his contentions as to his reputation and the nature of his business.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Judge.

Charles W. Rice was convicted of using the mails in pursuance of a scheme to defraud, and he brings error. Affirmed.

William H. Garland, of Boston, Mass., for plaintiff in error.

Lewis Goldberg, Asst. U. S. Atty., of Boston, Mass. (Thomas J. Boynton, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge. The plaintiff in error, hereinafter called the defendant, was indicted and convicted in the District Court of Massachusetts, under section 215 of the Criminal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. 1916, § 10385]), for use of the mails in pursuance of a scheme to defraud one A. Blakeley Smith, by claiming to have certain information of immoral relations between said Smith and one Miss Borowski, which he threatened to make public unless Smith would pay him the sum of $1,000. There were two counts in the indictment on which he was tried, each alleging the mailing of a letter by the defendant to said Smith,—one dated April 6 and the other April 12, 1917. A verdict of "guilty" was returned upon both counts, upon which he' has been sentenced to be imprisoned, and he now seeks a reversal of the judgment against him, alleging as the first assignment of error the refusal to receive certain evidence offered by him, and in the other six assignments the reception of certain evidence against his objection.

The first assignment of error relates to the offer of proof in regard to the seizure of certain letters and photographic prints which were made by a police officer of the city of Boston, under a warrant issued by the municipal court of that city upon the complaint of Roy E. Nelson, a United States post office inspector, who had arrested the defendant without a warrant, and turned him over to the police department of the city of Boston, where he had been searched and a key to a safety deposit box in the vaults of the United States Trust Company taken from him. After the key was obtained, a complaint was made by the post office inspector, and a warrant was issued to search the safety deposit box of the defendant for two paper writings, two photographic prints, and two photographic negatives, alleged to be the property of A. Blakeley Smith and to have been stolen from him by some person unknown.

The defendant's bill of exceptions contains the following statement in regard to the papers seized under the warrant, and their identification:

"They consisted of a letter from A. Blakeley Smith to Miss Borowski, a letter from said Smith to one Burrows, both of which said Smith in his testimony identified as having been written by him, a carbon copy of a letter from Burrows to Smith, which he in his testimony identified as an accurate copy of a letter received by him and a carbon copy of a letter signed 'Thomas Dolan,' which said Smith identified as being a copy of a letter received by him,

and which was in fact a copy of the letter set out in the first count in the indictment.

"The photographic copies taken from the box were copies of said letter from Smith to Miss Borowski. This letter did not bear Smith's signature, but his signature had been cut off from his letter to Burrows and pasted on a, separate piece of paper, also taken from the defendant's safety box, which was produced and identified."

Smith also testified that he received through the mails the letters alleged in the indictment to have been mailed to him. The government offered in evidence the letters and photographic prints taken from the defendant's safety deposit box. The defendant objected to their admission and claimed that they had been seized in violation of his constitutional rights under the Fourth Amendment, and that if received in evidence he would be thereby compelled to furnish evidence against himself, in violation of the Fifth Amendment to the Constitution of the United States.

His counsel stated to the court "that he proposed to offer evidence from which he would argue that the complaint was not made in good faith by said Nelson for the purpose of obtaining stolen property, or for any other proper or legal purpose, but was made solely for the purpose of obtaining evidence for use in this trial; that instead of taking from the safety deposit box what the search warrant called for, viz. "two paper writings and two photographic prints," the officer took therefrom "four paper writings, being the ones already described, and the photographic prints in question."

The learned District Judge declined to admit this evidence, and permitted the government to introduce in evidence all the contents of the defendant's safety deposit box, assigning the following reasons for his ruling:

"Property was seized by a state officer under a state warrant. No United States official had anything to do with bringing about the seizure or making the seizure, except that the search warrant itself was applied for by one of the post office inspectors. It is said for the defendant that I ought to go into the good faith of that application, and try to determine whether or not the state court was imposed upon in that manner. I do not think so. It seems very clear to me that that is a question for the court which issued the warrant to decide, and that it ought to be raised by appropriate proceedings in that case. What I have said is enough to decide the matter, of course, but I think, also, that if there was, as far as the additional papers are concerned, a taking of them, that may well be regarded as an incident to a search made under the warrant and to come within that doctrine of an incidental seizure. It seems to me therefore that the evidence should be admitted."

No motion was made to quash the indictment, nor had the defendant moved in the municipal court of Boston to have the validity of the complaint or the warrant determined. The seizure under the warrant was made on May 9, 1917, and the trial was had at the October term, 1917, and not until the papers were offered in evidence by the government did the defendant do anything to indicate that he intended to attack the validity of the complaint and warrant and the seizure of the papers on the ground that it had been made in violation of his constitutional rights, and then he only objected to the admission of the papers in evidence, with offer of proof as to what he claimed to be

an unreasonable search and a violation of his constitutional rights. The ruling of the learned District Judge is fully supported by the case of Adams v. New York, 192 U. S. 585, at page 594, 24 Sup. Ct. 372, at page 374 (48 L. Ed. 575), in which the court said:

"The question was not made in the attempt to resist an unlawful seizure of the private papers of the plaintiff in error, but arose upon objection to the introduction of testimony clearly competent as tending to establish the guilt of the accused of the offense charged. In such cases the weight of authority as well as reason limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained."

And also (192 U. S. at page 598, 24 Sup. Ct. at page 375, 48 L. Ed. 575):

"The security intended to be guaranteed by the Fourth Amendment against wrongful search and seizures is designed to prevent violations of private security in person and property and unlawful invasion of the sanctity of the home of the citizen by officers of the law, acting under legislative or judicial sanction, and to give remedy against such usurpations when attempted. But the English and nearly all of the American cases have declined to extend this doctrine to the extent of excluding testimony which has been obtained by such means, if it is otherwise competent."

In this circuit, in the case of N. Y. C. & H. R. R. Co. v. United States, 165 Fed. 833, the court held, at page 843 (91 C. C. A. 519):

"Notwithstanding Boyd v. United States [116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746], the usual rule is that, where papers are in fact in court, they may be used in evidence, even though the party who offers them in evidence procured them illegally. Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, and other cases. Indeed, independently of any particular decisions, such has always been understood to be the rule."

The defendant relies upon the case of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, the opinion in which was drawn by the same learned Justice who spoke for the court in Adams v. United States; but the facts in that case were materially different from those in the case under consideration, for, in that, evidence was taken from the house of the defendant, in his absence, by a federal officer, acting without a search warrant, and application was seasonably made to the court, prior to the trial, for its return, and the court there held:

"The evidence thus taken should have been ordered to be returned and that a conviction based upon that evidence would be set aside."

In the case under consideration, the papers offered in evidence were taken by a state officer, acting under and in pursuance of a search warrant issued by the municipal court of the city of Boston, and no steps were taken or proceedings instituted for a return of the papers, or for determining the validity of the complaint and warrant before the trial, nor was the indictment attacked before trial in any way, because obtained upon illegal evidence. In the Weeks Case, 232 U. S. at page 398, 34 Sup. Ct. at page 346, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, the court said:

"As to the papers and property seized by the policemen, it does not appear that they acted under any claim of federal authority such as would make

the amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the fourth amendment is not directed to the individual misconduct of such officials. Its limitations reach the federal government and its agencies."

The opinion also makes it plain (232 U. S. at page 392, 34 Sup. Ct. at page 344, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177) that the Weeks Case does not reach the question decided in Adams v. New York, and that it is not in conflict with that decision, for the court there says:

"Nor is it the case of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained."

The case of Flagg v. United States, 233 Fed. 481, 147 C. C. A. 367, which is also relied upon by the defendant, dealt with a seizure by federal officers, without a warrant, and in the opinion (233 Fed. at page 484, 147 C. C. A. 367) it is distinguished from Adams v. New York:

"The case of Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, differs from the case at bar in many important particulars, but chiefly in the essential feature that in that case a valid search warrant was issued and incidentally the letters were seized in executing it. Had there been such a warrant issued on proper proof by competent authority in the case at bar the defendant's contention that the seizure of his property was unlawful, wanton and in violation of his constitutional rights might have been unavailing."

In Lyman v. United States, 241 Fed. 945, 154 C. C. A. 581, where there was a seizure of records and papers by federal officers, who acted without a search warrant, and where no application had been made for their return previous to the trial, the court said (241 Fed. page 948, 154 C. C. A. 581):

"In the late case of Weeks v. United States, 232 U. S. 383 [34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177], the Supreme Court, while holding that the federal courts cannot, as against a seasonable application for their return in a criminal prosecution, retain for the purposes of evidence the letters and correspondence of the accused, seized in his house, during his absence and without his authority, by a United States marshal holding no warrant for his arrest or for the search of his premises, still adhered to the rule laid down by it in Adams v. New York, to the effect that a collateral issue will not be raised to ascertain the source of competent evidence, although illegally obtained, where no application had been made by the accused for its return before trial.

"In the present case it is not pretended that any such application was made on behalf of the plaintiff in error for the return of the records and papers, to the introduction of which objection was made on the trial, notwithstanding they had been seized, according to the statement contained in the brief for the government, more than two years before the trial took place; and that the records and papers so offered and received in evidence strongly tended to show the alleged guilt of the defendant to the indictment is not even questioned. We therefore are of the opinion that the trial court was right in its ruling admitting the evidence complained of."

[1] If other letters besides those described in the warrant were taken, their seizure was incidental, and was made in the execution of the warrant. We find, therefore, no error in the admission of all.

The third, fourth, fifth and sixth assignments of error raise the question whether carbon copies of the second "Thomas Dolan" letter, dated April 12, 1917, which is set forth in the second count in the indictment, and which was received through the mails by the president of the Young Men's Christian Union and the president and secretary of the Algonquin Club, and a photostatic copy of the letter of Smith to Miss Borowski, which was sent to the president of the Young Men's Christian Union, should have been admitted in evidence. A copy of the letter, dated April 6, 1917, signed "Thomas Dolan," being the letter upon which the first count in the indictment was based, was found in the defendant's box. In this letter, directed to Blakeley Smith, Hotel Tuileries, Boston, Smith was directed to get a bank cashier's check for $1,000, payable to Thomas Dolan, to place the check in an envelope, marked "G. 43, Globe Office," take it to the Globe office, hand it in at the letter counter, and that the letter with the check must be at the Globe office not later than Wednesday, April 11; that if the check was not at the Globe office Wednesday, April 11, copies of this letter would be immediately made public; and in it the threat was made that, if he failed to do as directed, information in the possession of the writer would be made public at Smith's Hotel, the Algonquin Club and to officials of the Union.

[2] Communications sent in accordance with the threat were clearly admissible, as the finding of the original letter of Smith to Miss Borowski and a substantial copy of the first "Thomas Dolan" letter in the defendant's safety deposit box sufficiently connected him with these letters to render them admissible as a part of the scheme to defraud with which he was charged.

[3] The seventh assignment of error relates to the reception in evidence of a letter of the defendant to Miss Borowski. This letter was offered in evidence by the government during the cross-examination of the defendant after he had identified it and had introduced evidence of his reputation in the community, and that his business was that of buying and selling real estate, and a stockbroker. The introduction of this letter in cross-examination was clearly admissible to refute the claims made by the defendant as to his business standing in the community and the nature of the business in which he had been engaged, and we find no error in its admission.

The judgment of the District Court is affirmed.