### MacKNIGHT v. UNITED STATES.*

(Circuit Court of Appeals, First Circuit. March 11, 1920.)

#### No. 1438.

1. CRIMINAL LAW ⬦576(4)—DEFENDANT, INTERPOSING DILATORY PLEAS, HELD TO HAVE HAD A SPEEDY TRIAL.

A defendant *held* to have been granted a speedy trial, where he filed a dilatory plea to a first indictment, which made a second one necessary, and did not press for trial, but was tried within three months after return of the first indictment.

2. POST OFFICE ⬦35—ACTS NOT ENUMERATED IN STATUTE MAY CONSTITUTE USE OF MAILS TO DEFRAUD.

Criminal Code, § 215 (Comp. St. § 10385), making it an offense to use the mails to defraud, is not limited to the particular frauds enumerated therein, but extends generally to all schemes "to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations or promises."

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 252 U. S. ⸺, 40 Sup. Ct. 586, 64 L. Ed. ⸺.

3. CRIMINAL LAW ⬤556—ON TRIAL FOR USING MAILS TO DEFRAUD, PROSECU-
TION MAY SHOW THAT DEEDS INTRODUCED WERE FORGED.

On trial of a defendant, charged with using the mails in furtherance
of a scheme to defraud, by selling land to which he had no title, in-
troduction by the government of certified copies of the record of deeds
purporting to convey title to defendant did not estop it from showing
that the deeds were forged.

4. POST OFFICE ⬤48(8)—INDICTMENT FOR USING MAILS TO DEFRAUD HELD SUF-
FICIENT.

That a deed alleged to have been executed as part of a scheme to de-
fraud, to be carried out by using the mails, was executed on a date differ-
ent from that alleged in the indictment, held not a fatal variance.

5. CRIMINAL LAW ⬤393(2)—PAPERS SEIZED ON SEARCH WARRANT ADMISSIBLE
IN EVIDENCE.

Papers and articles seized from defendant on a search warrant issued
under Act June 15, 1917, c. 30, tit. 11, § 2 (Comp. St. 1918, Comp. St. Ann.
Supp. 1919, § 10496¼b), as property used as the means of committing a
felony, where no petition for its return was filed, held properly received
in evidence.

6. CRIMINAL LAW ⬤755½—COMMENTS ON EVIDENCE BY JUDGE IN INSTRUC-
TIONS HELD NOT ERROR.

Comments on the evidence by the judge in his instructions in a federal
court are not error, where the jury are told that determination of the
facts rests entirely with them.

7. CRIMINAL LAW ⬤371(1), 372(1)—EVIDENCE OF OTHER OFFENSES ADMISSI-
BLE TO SHOW INTENT AND GENERAL SCHEME TO DEFRAUD BY USE OF MAILS.

Where defendant was charged with having devised a scheme to de-
fraud, to be carried out by using the mails, which scheme included causing
deeds to land to be forged and recorded to show title in defendant, and
offering such land for sale, similar deeds to other lands in another county
than that named in the indictment, purporting to have been executed by
the same persons at the same time and to convey title to defendant,
which the testimony tended to show were also forged, held admissible,
not only on the question of intent, but as tending to show a general
scheme.

8. WITNESSES ⬤337(5), 405(2)—DEFENDANT MAY BE IMPEACHED BY SHOWING
OTHER CRIMES; STATEMENTS BY DEFENDANT ON CROSS-EXAMINATION MAY BE
CONTRADICTED.

Where a defendant offers himself as a witness in his own behalf, evi-
dence that he has committed other crimes is admissible to affect his credi-
bility, and his testimony given by him on cross-examination may be con-
tradicted; his credibility being directly in issue.

9. CRIMINAL LAW ⬤829(9)—POST OFFICE ⬤50—GIVING AND REFUSAL OF IN-
STRUCTIONS APPROVED.

Refusal of instructions held proper, in view of given instructions re-
lating to the burden and measure of proof, and the effect as evidence of
deeds claimed by the prosecution to be forgeries, and the given instructions
held not erroneous.

In Error to the District Court of the United States for the District
of Massachusetts; James M. Morton, Judge.

Criminal prosecution by the United States against Harmon P. Mac-
Knight. Judgment of conviction, and defendant brings error. Af-
firmed.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harmon P. MacKnight, in pro. per.

Lewis Goldberg, Asst. U. S. Atty., of Boston, Mass. (Thomas J. Boynton, U. S. Atty., and Daniel A. Shea, Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The plaintiff in error, hereinafter called the defendant, was convicted in the court below upon an indictment under section 215 of the Criminal Code of the United States. Act March 4, 1909, c. 321, 35 Stat. 1130, Comp. St. § 10385.

The indictment contained two counts. In the first, the scheme or artifice which it was charged the defendant devised was, in substance, that the defendant falsely pretended that one John Cassidy, of Bangor, in the state of Maine, on the 3d day of November, 1912, conveyed to the North Carolina Traction Company, a corporation, certain timber lands located in Piscataquis county, in the state of Maine; that the said North Carolina Traction Company had conveyed said timber lands to him; and that thereafter he caused the deeds by which these conveyances were alleged to have been made to be duly recorded in the proper registry of deeds, with the view and intent, by such false representations, to cheat and defraud such persons as might be induced to buy said lands of him, well knowing that he had no title to said lands; and it was alleged that, on the 5th day of December, 1918, in furtherance of this scheme or artifice to defraud, the defendant sent through the United States mail a certain letter, set out in said count, addressed to Mrs. F. V. Marr, in the city of Boston, in which he claimed to be the owner of these timber lands, and offered to sell the whole or any part of them to her.

In the second count the defendant was charged, for the purpose of executing this scheme and artifice to defraud, with having mailed a certain letter, addressed to the register of deeds, Dover, Maine, in which a deed, purporting to have been given by the said John Cassidy to the North Carolina Traction Company, was inclosed.

An indictment was returned against the defendant under the name of Hiram P. MacKnight on January 28, 1919, to which he filed a plea in abatement alleging that his true name was not Hiram P. MacKnight, but Harmon P. MacKnight, and thereupon the court continued the case, and the defendant made no effort to be heard.

On the 27th day of February, 1919, the indictment was returned under which he has been tried, and in which he was charged with the same offense as that charged in the first indictment, but under the name of Harmon P. MacKnight.

[1] The indictment was attacked by a plea in bar and a plea to the jurisdiction, on the ground that the court had lost jurisdiction because the defendant had not been granted a speedy trial, and by a demurrer on the ground that the acts with which the defendant was charged were not in violation of the statute under which the indictment was drawn. These were overruled, and the defendant excepted. He was tried April 8, 1919.

In Beavers v. Haubert, 198 U. S. 77, 87, 25 Sup. Ct. 573, 576 (49 L. Ed. 950), the court said:

"The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

In view of the fact that a dilatory plea was filed to the first indictment, making further investigation necessary, and that the defendant did not press for a hearing, we think he was granted a speedy trial.

[2] While section 215 makes it penal to use the United States mails for certain purposes specifically enumerated therein, it also generally provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package * * * in any post office, or station thereof, or street or other letter box of the United States, * * * shall be fined not more than one thousand dollars, or imprisoned not more than five years, or both."

Its language is broad enough to include any "scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses," and there have been numerous prosecutions under it for the use of the mails in furtherance of schemes other than those particularly mentioned in the statute. There was no error in overruling the demurrer, or the plea in bar, or the plea to the jurisdiction.

The defendant filed a motion in arrest of judgment, which was denied. This he has assigned as error, and, in connection with other errors assigned, raises the following questions in addition to those already considered:

(1) Whether the government, having introduced in evidence duly certified copies of deeds, purporting to have been given by John Cassidy to the North Carolina Traction Company and by the North Carolina Traction Company to the defendant, could thereafter impeach these deeds by testimony tending to prove that they were forged.

(2) Whether, under an allegation in the indictment, that the defendant had falsly pretended that John Cassidy, by deed dated November 3, 1912, had conveyed certain lands in Piscataquis county, in the state of Maine, to the North Carolina Traction Company, a deed dated February 3, 1912, could be offered in evidence.

(3) Whether certain property, seized under a legal search warrant, should have been received in evidence.

(4) Whether the presiding judge erred in commenting upon the evidence in his charge to the jury.

(5) Whether the court erred in admitting the testimony of John W. Higgins, register of deeds of Somerset county, in the state of Maine, that he received for record a deed of land situated in that county, purporting to have been given by John Cassidy to the North Carolina Traction Company, and in admitting the original deed of the same land, purporting to have been given by the company to the defendant.

(6) Whether the defendant, having testified in cross-examination that he had not been confined in a state penitentiary and that he did not recognize two men who were present at the trial and were officers connected with said penitentiary, could be impeached by calling these officers as witnesses.

(7) Whether the court erred in refusing to give certain instructions requested by the defendant.

[3] 1. The defendant strenuously contends that, because copies of deeds certified by the register of deeds of Piscataquis county, Me., were introduced in evidence by the government, in support of the allegations in the indictment, they could not be impeached by it, and shown to be forged. It is claimed that they are copies of public records and under section 1, art. 4, of the Constitution of the United States, and the act of Congress made in pursuance thereof are entitled to "full faith and credit," and cannot be attacked collaterally in any judicial proceedings. But a deed, when recorded, is not a public record, in the sense in which the word "record" is used in the constitutional provision that—

"Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state."

The register of deeds, who receives a deed for record, performs no judicial act other than to observe that the deed has been properly acknowledged, as he is required by chapter 78, § 33, of the Revised Statutes of Maine. In copying a deed into a book, which is open to public inspection, he does not thereby make it genuine, if false. Sections 131, 132 of chapter 87 of the Revised Statutes of Maine provide that certified copies of deeds are admissible in evidence where the original deeds would be admissible. Under this provision the register simply certifies that the copy offered in evidence is a true copy of the original deed; but his certificate does not in any way heal its invalidity or make that genuine which is false.

While a duly authenticated copy of the record of a deed is prima facie evidence of its execution and delivery, yet this can be rebutted. Egan v. Horrigan, 96 Me. 46, 50, 51 Atl. 246. If it were proven to the satisfaction of the jury that the deeds were forged, then there was no notary's certificate. The error into which the defendant has fallen, and which destroys the force of his whole argument, is in supposing that a record of a false and forged instrument can raise any presumption whatever that it is valid. If it were false, no presumption that it is a true instrument could be created by the act of a mere recording officer. The copy of the deed was introduced by the government, not as evidence of title, but solely as evidence of part of the "scheme or artifice to defraud" which the defendant had devised, namely, that he either had forged the deeds, or had knowledge that they had been forged, and that he had procured them to be recorded in the proper registry of deeds, in order that he might falsely claim that he had a record title to the timber lands which he offered for sale. It is true that it was necessary for the jury to find that these deeds were forged before he could be convicted of the offense with which he was charged;

but because he was not indicted for forgery the jury were not thereby prevented from finding him guilty of the offense with which he was charged, if they were satisfied beyond a reasonable doubt that the deeds were forged. The question of the forgery of the deeds was fairly raised and presented to the jury by the court as follows:

"Are you satisfied beyond a reasonable doubt that the Cassidy and Traction Company deeds are invalid and fictitious and forged instruments; that the defendant either was a forger himself, or well aware of the forgery, and of the fictitious character of those instruments, and knowing those facts nevertheless planned to get money out of people by pretending to sell the land which the deeds appear to convey?"

The jury was further told:

"It devolves upon the prosecution to establish to your satisfaction that he did not have title, and knew that he did not have title, when he offered that property for sale, and understood that he was endeavoring to swindle. That must be established, as I said to you, beyond a reasonable doubt, or he should be acquitted."

The defendant's contention that the government, having introduced in evidence copies of the deeds of the Piscataquis county land to prove the scheme to defraud which the defendant had devised, could not show that they were spurious and forged, is clearly without merit.

[4] 2. When the government offered in evidence the certified copies of deeds above referred to from John Cassidy to the North Carolina Traction Company, dated February 3, 1912, and from the North Carolina Traction Company to Dr. H. P. MacKnight, dated June 26, 1912, the defendant made no objection to the admission of the latter, but objected to the admission of the former for the reason that the deed bore the date of February 3, 1912, while its date in the indictment was alleged to be November 3, 1912. The court overruled the defendant's objection and admitted the certified copy in evidence. This is assigned as error. We think, however, there was no error in its admission. The gist of the offense was the use of the United States mail in the execution or attempted execution of a scheme to defraud. The devising of a scheme to defraud is a necessary prerequisite or condition to the commission of the offense, but does not of itself constitute the crime with which the defendant was charged.

It was said by the court in Colburn et al. v. United States, 223 Fed. 590, 593, 139 C. C. A. 136, 139:

"While the particulars of the scheme are matters of substance, and must be described with certainty sufficient to show its existence and character, and to fairly acquaint the accused with the particular fraudulent scheme charged against them, the scheme itself need not be pleaded with all the certainty as to time, place, and circumstance requisite in charging the gist of the offense, the mailing of the letter or other article, in execution or attempted execution of the scheme. Brooks v. United States, 146 Fed. 223, 76 C. C. A. 581; Lemon v. United States, 164 Fed. 953, 90 C. C. A. 617; Horn v. United States, 182 Fed. 721, 105 C. C. A. 163."

See, also, Durland v. United States, 161 U. S. 306, 315, 16 Sup. Ct. 508, 40 L. Ed. 709; Rosen v. United States, 161 U. S. 29, 32, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Rosecrans v. United States, 165 U. S. 257, 263, 17 Sup. Ct. 302, 41 L. Ed. 708.

We think the scheme was sufficiently outlined in the indictment, without the date of the deed, to inform the defendant of the nature and cause of the accusation against him to enable him to prepare his defense, and also, after judgment, either of acquittal or conviction, to furnish him the means of protecting himself against further prosecution for the same offense. The date of the deed was only one of the means of its identification, and was in no sense a substantial particular of the scheme to defraud. The substance of the whole scheme or pretense, which was material, was the pretended ownership by the defendant of timber land in Piscataquis county, Me.; and to give color to this fraudulent pretense the defendant's title to this land was alleged to have been derived from John Cassidy, a large owner of timber lands in Maine.

[5] 3. Certain papers and other articles which were seized by a deputy marshal, acting under a legal search warrant, were admitted in evidence over the objection of the defendant. He did not, before the trial, file any petition for their return, but, when they were offered in evidence, objected to their admission. The seizure was made by virtue of a warrant issued under the authority of the Act of June 15, 1917, c. 30, tit. 11, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼b), which provides that a search warrant may be issued on several grounds, of which the following is one:

"2. When the property was used as the means of committing a felony; in which case it may be taken on the warrant from any house or other place in which it is concealed, or from the possession of the person by whom it was used in the commission of the offense, or from any person in whose possession it may be."

The property having been seized under search warrants, "as the means of committing a felony," and being before the court, and no petition for its return having been filed, it was properly received in evidence. Rice v. United States, 251 Fed. 778, 164 C. C. A. 12; Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575.

[6] 4. The defendant also assigned as error that the presiding judge in his instruction to the jury commented upon certain phases of the evidence in a manner prejudicial to him. We have carefully examined the parts of the charge of which he complains, and find no error, in view of the fact that the presiding judge in a federal court may express his opinion upon the evidence, provided the jury is told that the determination of the facts rests entirely with them. This was done, and they were told:

"You are absolutely at liberty in this case, as in any case that we shall sit together in later, to disregard anything I say to you expressing my views about the facts, and it is your sworn duty to disregard what I say to you about facts, if your opinion runs to the contrary."

[7] 5. By his fourth, fifth, and sixth assignments of error the defendant has raised the question whether there was error in admitting testimony tending to show that deeds of land in Somerset county, in the state of Maine, which adjoins Piscataquis county, were forged, and whether the court erred in its ruling in regard to the same.

John W. Higgins, register of deeds for the county of Somerset, in

the state of Maine, testified that he received for record a deed of land in said county from John Cassidy to the North Carolina Traction Company. To this testimony the defendant objected on the ground that there was no allegation in the indictment in regard to land in Somerset county. The district attorney then informed the court—

"that the government had in its possession a deed which purports to convey land from the North Carolina Traction Company to this defendant. The land is located in Somerset county. It purports to be the original deed. We have not the original deed in reference to the land in Piscataquis county. We propose to show that the Somerset county deed, which was recorded at or about the same time, is a forgery. Not only the notary's signature has been forged, but the seal has been forged. It is a question of intent."

He also stated that the land offered for sale by the defendant in the communications which he sent through the mails was located in both counties.

The court ruled that the testimony was admissible as bearing upon the question of the intent of the defendant in sending communications through the mail, offering to sell land in Piscataquis county.

We think it was admissible on the broader ground that it tended to show a general plan or scheme to defraud, which included the forging and recording of deeds in both Somerset and Piscataquis counties with a common intent.

The defendant admitted that the timber land which he had offered for sale was located in both Somerset and Piscataquis counties, and that he had received through the general delivery of the post office in Boston the deeds from John Cassidy to the North Carolina Traction Company, which had been recorded, one in the Somerset county and the other in the Piscataquis county registry of deeds, and returned in self-addressed envelopes which had been inclosed. He also produced and offered in evidence what purported to be a deed of the Piscataquis county land given by the North Carolina Traction Company to him.

The property which had been seized in his apartments, and which was offered in evidence, consisted of a warranty deed of the Somerset county land from the North Carolina Traction Company to the defendant, dated June 26, 1912; a seal purporting to be that of L. P. French, a notary public, a seal of the North Carolina Traction Company, a typewriting machine, certain blank sheets of paper, bearing the water mark "transcript bond," also certain documents and checks bearing the signature of E. Hillman, the president of the North Carolina Traction Company, by whom the deed in question appeared to have been executed, and that of L. P. French, the notary before whom it purported to have been acknowledged. There was evidence that Hillman, French, and Cassidy were dead at the time of the trial. There was also evidence that the defendant had a notary's seal made in Boston from the impression of the notarial seal of L. P. French, and also expert testimony that the signature of Mr. Hillman upon the Somerset county deed, and that of L. P. French, the notary, were forged; that the impression made by the notary's seal upon this deed was made by the seal which had been seized, which could be recognized because of certain peculiarities; that the deed was written upon the typewriter,

which had been seized, and not upon a printed blank, but upon paper like that seized in the defendant's apartments and bearing the watermark "transcript bond."

There was evidence that the deed of the Piscataquis county land, which the defendant produced, was written upon the same typewriter as that upon which the Somerset county deed was written. It bears the same date as that, June 26, 1912, and was written, not upon a printed blank, but upon paper bearing the watermark "transcript bond." It purports to have been executed by Mr. Hillman as president of the North Carolina Traction Company, and to have been acknowledged by him before L. P. French, notary public, and bears the impression of the same notarial seal. There was also evidence that the letter of instruction, which was written to the register of deeds of Somerset county and mailed with the deed which was sent for record, was written upon the typewriting machine upon which the deeds were written. The defendant admitted mailing the letters as charged in the indictment, but claimed that he was the owner of the lands which he offered for sale. The only question for the jury to determine was whether he had devised a scheme to defraud, which included the forging, or being a party to the forging, of the deeds and procuring their record, so that the record title might appear in him; and, as bearing upon this question, we think the evidence in regard to deeds of land in Somerset county was properly admitted.

[8] 6. The district attorney was allowed to inquire of the defendant on cross-examination whether he was the same person who was tried and convicted, under the name of Hiram P. MacKnight, of the crimes of forgery and obtaining money under false pretenses in the state of Ohio, and sentenced to be imprisoned in the Ohio penitentiary therefor, to which questions the defendant replied that he was not. The defendant was then asked if he had ever seen two men named Cherrington and Davis in the Ohio penitentiary, both of whom were then present in court, to which the defendant replied in the negative; and thereafter the government was allowed to introduce in rebuttal the testimony of William B. Cherrington and John E. Davis, who had been connected with the Ohio penitentiary, and who testified that they recognized the defendant as having been an inmate of that institution.

The defendant had voluntarily offered himself as a witness in his own behalf, and evidence that he had been convicted of other crimes was clearly admissible as bearing upon his credibility. The rule that a party is bound by the answer of a witness which is drawn out on cross-examination upon a collateral matter does not apply. The credibility of the witness was directly in issue, and therefore his testimony denying that he had been an inmate of the Ohio penitentiary could be impeached.

[9] 7. The requested instructions, which were not given, relate to the presumptions to be drawn from the deeds themselves and from the notary's certificate. The court was asked to instruct the jury "that the law presumes all the deeds involved in this case to be genuine until proved fraudulent beyond a reasonable doubt." The jury were instructed that it devolved upon the prosecution to establish beyond a

reasonable doubt that the defendant did not have title, and knew he did not have title, to the property which he offered for sale, and that it did not devolve upon him to establish that he did have title or believed' he did have title. If the deeds were found by them to be fictitious and forged, certainly no presumptions could be drawn from them; and it was sufficient to instruct the jury that, in order to convict the defendant, it was necessary that they be satisfied beyond a reasonable doubt that the deeds were fictitious and forged.

In regard to the notary's certificate the jury were correctly instructed:

"You have for what it is worth the notarial seal, which, if it is genuine, is prima facie evidence of the facts stated over it. Of course, if the certificate is not, in your opinion, a genuine certificate, there would be no such presumption."

We find no error in the refusal of the court to give the requested instructions.

The judgment of the District Court is affirmed.