Fuld, J.
The defendants, magazine distributors in the City of Mt. Vernon, had for many years been selling so-called “ dream books ” and “ tip-sheets ” to which devotees of the game known as policy had recourse in their search for the elusive winning number.[1] Following a police raid and the seizure of those items, an information containing six counts was filed against the defendants. They were found guilty, after trial, upon two counts, of violating section 974 of the Penal Law in that they possessed articles commonly used in promoting ” policy and the convictions were affirmed by the Westchester County Court. The appeal is here by permission of the Chief Judge.
*539 Although the Legislature could, of course, choose to legislate with respect to these dream hooks and tip-sheets, we find nothing in section 974, as it now reads, which renders criminal their possession or sale. The portion of the statute relied upon by the People provides that “ A person * * * who shall have in his possession, knowingly * * * any paper, print, writing, number, device, policy slip, or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly called ‘ policy ’ * * * is a common gambler, and guilty of a misdemeanor.” Concededly, the defendants did not ‘ ‘ carry on ” or “ play ’ ’ policy, nor were the books and pamphlets which they sold used in “ carrying on ” or “ playing ” this game. Accordingly, since the term “ promote ” necessarily takes its sense and meaning from the terms “ carry on ” and “ play,” it follows that those articles were not used to ‘[1] promote ’ ’ policy.
In point of fact, the statute is aimed only at the players — that is, at those who possess policy slips — and the entrepreneurs and managers of policy and those in pari delicto with them. (See, e.g., People v. Hines, 284 N. Y. 93, 104-105; People v. Wolosky, 296 N. Y. 236, 238; cf. People v. Adams, 176 N. Y. 351, 360, affd. 192 U. S. 585; People v. Engeman, 129 App. Div. 462, 465-467, affd. 195 N. Y. 591.) “ Section 974”, this court wrote in the Hines case, “ prohibits one from keeping an establishment for policy playing', from delivering or receiving money by playing policy, or possessing policy slips, or other articles used in carrying on policy, or owning or being the agent or janitor of any establishment where lottery policies are sold ” (284 N. Y. 93, 104-105). And in People v. Wolosky, after adverting to the Hines case, we stated (296 N. Y., at p. 238): “ Thus, four kinds of activities having to do with policy are forbidden: maintaining a place wherein to play it, having ownership or control of such a place, handling the money involved, or possessing papers, writings or articles commonly used in carrying on this form of gambling.”
The only activities forbidden by section 974, therefore, are those of the operators of games of policy, the entrepreneurs and their henchmen, and the players. Since the defendants, in distributing the reading material before us were neither entrepreneurs of the game (or their accomplices) nor players, and, *540 since they had nothing whatsoever to do with running or operating those games, they may not be brought within the compass of the statute. This conclusion is confirmed by the circumstance that the articles whose possession is forbidden are the essential “ tools ” of the game, the items actually required to carry it on. (People v. Adams, 176 N. Y. 351, 360, affd. 192 U. S. 585, supra.) A tip-sheet, while it may “ guide ” one to a particular number, cannot be considered a tool, essential or otherwise, in playing the game. (See People v. Engeman, 129 App. Div. 462, affd. 195 N. Y. 591, supra.) In the Engeman case—involving book-making under old section 344 of the Penal Code (present Penal Law, § 970)—distributors of a race-horse tip-sheet, at a time when betting on horse races even at the track was illegal, were charged with owning a “ device and apparatus for gambling”. Both the Appellate Division and the Court of Appeals affirmed the trial court’s order sustaining the defendants’ demurrer to the indictment and, in the course of its opinion, the Appellate Division stated (p. 466): “ A ‘ device or apparatus for gambling ’ is a device or apparatus designed for carrying on the actual gambling * * * This is the test, whether the implement or device is used in determining who shall win or lose, whether it is an integral part of the actual gambling.” And, added the court (p. 467), “ the mere fact that [the tip-sheet] might afford facts which would be useful to the man of sporting proclivities in making up his mind how he desired to place his wager does not constitute it a device for gambling under any of the definitions which we have been able to find.” By the same token, the possession of articles, having no integral connection with the playing of policy and not used in the actual policy operation, does not fall within the prohibition of section 974.
The Legislature, by denominating as “ a common gambler ” one who violates the statutory proscription, made it exceedingly plain that the activities forbidden are those relating to the gambling operation itself, to the carrying on or the playing of policy. Baleful and wrongful though the sale of dream books and tip-sheets may be, by no reasonable construction can it be said to constitute gambling or to render the vendor a gambler. The situation would, of course, be different if the defendants had allied or associated themselves with the persons *541 actually running or carrying on the games, but there is no evidence of any such connection in the record before us.
The judgments of conviction should be reversed and the information dismissed.
Chief Judge Conway and Judges Desmond, Dye, Froessel and Burke concur with Judge Fuld; Judge Van Voorhis dissents and votes to affirm (People v. Hartmann, 274 App. Div. 752).
Judgments reversed, the information dismissed and the fines remitted.

. These various booklets and pamphlets are designed to furnish information and hints which the prospective player will find “ helpful ” in selecting the number to be played. A tip-sheet, such as the defendants’ Weekly Piekem Rajah Rabo, consists of records of past winning' numbers, while a dream book, such as the defendants’ Black Cat Dream Book, professes to “interpret * " ** dreams through the science of numerology ”; listing key words of dreams in almost infinite variety, it assigns a number to each dream subject and counsels the dreamer to play the number with which his dream is coupled.