PEOPLE *v.* LOCRICCHIO.

GAMING—POSSESSOR OF TIP SHEETS.
  A tip sheet which may be used as a guide to increase a gambler's confidence in the choice of a number is not an article or device having an integral connection with the gambling game nor used in the actual operation thereof, hence, possession of such sheets does not alone constitute prima facie evidence that the possessor is engaged in illegal gaming (CL 1948, § 750.306).

Appeal from Monroe; Weipert, Jr. (William J.), J. Submitted April 9, 1964. (Calendar No. 29, Docket No. 49,600.) Decided September 2, 1964.

Peter J. Locricchio was convicted of possession of gambling paraphernalia. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles J. Golden,* Prosecuting Attorney, for the people.

*Edward T. Kelley* and *Edward A. Khoury,* for defendant.

SMITH, J. Defendant was charged with violation of section 306 of the penal code, CL 1948, § 750.306 (Stat Ann § 28.538),[1] after police had found a large

---

[1] "All policy or pool tickets, slips or checks, memoranda of any combination or other bet, manifold or other policy or pool books or

REFERENCES FOR POINTS IN HEADNOTE
24 Am Jur, Gaming and Prize Contest § 31.

number of mutuel[2] tip sheets in his car on May 8, 1959. To the uninitiated, a tip sheet appears to be, at first blush, a crossing of pedigree between a sports tabloid and an advertising circular; only thing is that upon closer inspection sports news is found to be absolutely minimal and advertising lineage stands at zero. What doth appear is that 7/8 of the sheet is devoted to a great variety of 3-digit numbers. Some attest to what was lucky during the week that was, while others point to the future under such suggestive headings as "your horoscope predictions" and "the prophet." Defendant contends that such tip sheets are not prohibited by the section under which prosecution is brought. He says of the tip sheet that "It might be a comfort to the knowledge-thirsty, although undiscerning, numbers player before he enters into the gambling play. It may be a valued prop or stimulus to the wishful thinking of the habitual player. It is part, perhaps, of the literature, the cultural background of the numbers game." However, defendant says the tip sheet is not 1 of the devices, articles, et cetera, used in the actual conduct of a gambling operation and, therefore, its possession is clearly not prohibited.

Defendant cites the holding in *People* v. *Lalli,* 5 NY2d 536 (186 NYS2d 262, 158 NE2d 839). In that case, the court of appeals of New York reversed a lower court conviction where defendants, distributors of tip sheets and "dream books", were convicted under a statute prohibiting possession of any paper, device, et cetera, used in carrying on, promoting or playing the game of policy. The statute under which

---

sheets, are hereby declared a common nuisance and the possession thereof a misdemeanor, * * * .

"The possession of any such articles, or of any other implements, apparatus or materials of any other form of gaming, shall be prima facie evidence of their use, by the person having them in possession, in the form of gaming in which like articles are commonly used."

[2] See Webster's Third New International Dictionary, p 1493.— REPORTER.

prosecution was brought was section 974, p 556, of 39 Penal Law, Part 1, McKinney's Consolidated Laws of New York. In the *Lalli* opinion, the court referred to applicable provisions of the statute as follows (p 539):

"The portion of the statute relied upon by the people provides that 'A person * * * who shall have in his possession, knowingly * * * any paper, print, writing, number, device, policy slip, or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly called "policy" * * * is a common gambler, and guilty of a misdemeanor.' "

The court said further as follows (p 540):

"A tip-sheet, while it may 'guide' one to a particular number, cannot be considered a tool, essential or otherwise, in playing the game. See *People* v. *Engeman,* 129 App Div 462 (114 NYS 174), affirmed 195 NY 591 (89 NE 1107), *supra.* In the *Engeman Case*—involving book-making under old section 344 of the penal code (present penal law, § 970)—distributors of a race-horse tip-sheet, at a time when betting on horse races even at the track was illegal, were charged with owning a 'device and apparatus for gambling.' Both the appellate division and the court of appeals affirmed the trial court's order sustaining the defendants' demurrer to the indictment and, in the course of its opinion, the appellate division stated (129 App Div at page 466 (114 NYS at page 177)): 'A "device or apparatus for gambling" is a device or apparatus designed for carrying on the actual gambling. * * * *This is the test: Whether the implement or device is used in determining who shall win or lose; whether it is an integral part of the actual gambling.'* And, added the court (129 App Div at page 467 (114 NYS at page 177)), 'the mere fact that [the tip-sheet] might afford facts which would be useful to the man of sporting proclivities in making up his mind how he desired

to place his wager does not constitute it a device for gambling under any of the definitions which we have been able to find.' By the same token, *the possession of articles, having no integral connection with the playing of policy and not used in the actual policy operation,* does not fall within the prohibition of section 974." (Emphasis supplied.)

In the instant case, the prosecution counters with *People* v. *Singer,* 304 Mich 70. In the *Singer Case,* defendant was convicted of being "a disorderly person engaging in an illegal occupation or business, to-wit: possession of mutuel tickets." This Court held that proofs were sufficient to sustain the charge that defendant was a disorderly person engaged in an illegal occupation or business. The Court, in sustaining the conviction, rejected defendant's contention that possession of past dated mutuel tickets were not in violation of the statute, and, therefore, such possession was no proof that defendant was engaged in an illegal occupation. Although issues were framed in this limited manner, there is language in the *Singer* opinion upon which the prosecution relies to show that possession of mutuel tip sheets have been determined to be within the prohibition of the statute.

The language relied upon in *Singer* is at page 71, and reads as follows:

"At the trial abundant testimony was produced to prove beyond a reasonable doubt that at the time and place of defendant's arrest on July 5, 1942, he had in his possession a large supply of mutuel pads, some used and some new and unused; *mutuel tip sheets,* one of which was dated July 3, 1942; and also pay-off envelopes. All of the foregoing are commonly used in a type of gaming known as mutuels or numbers." (Emphasis supplied.)

This reference to "mutuel tip sheets" furnishes no warrant for the conclusion that mutuel tip sheets,

without more, are prohibited by the statute. Standing alone, the mutuel tip sheet has a status, within this context, somewhat akin to the daily newspaper which contains the United States treasury daily balance, portions of which are relied upon to determine numbers winners and also, in historical aggregate, tell of past winning combinations. Of similar standing might be the otherwise neutral plain white note pad which, until used in conjunction with other gambling devices or articles, maintains a respected neutrality. The proper construction of *Singer* is that mutuel pads, pay-off envelopes, and mutuel tip sheets, altogether, formed a proper evidentiary basis upon which a verdict against defendant Singer could be sustained.

However, the *Lalli Case* makes an important point which is applicable here: the tip sheet while it may be used as a "guide" to increase the gambler's confidence in his choice of a number, nevertheless, it is not an article or device having an integral connection with the gambling game nor is it used in the actual operation thereof, as contemplated by both the New York and Michigan statutes. If anything, the Michigan statute is narrower than that of New York in what is prohibited. The New York statute, as quoted in the *Lalli* opinion, contains a prohibition against articles "commonly used in carrying on, promoting or playing the game." It was argued in the *Lalli Case* that a tip sheet was an article for promoting gambling; the court of appeals held to the contrary. The word "promoting" is not contained in the Michigan statute. Our proscription is against possession of a number of named articles such as policy or pool tickets, slips or checks, memoranda, et cetera. It is provided that "possession of any such articles, or any other implements, apparatus or materials *of any other form of gaming,* shall be prima facie evidence of their use, by the person

having them in possession, *in the form of gaming in which like articles are commonly used."* (Emphasis supplied.)    CL  1948,  § 750.306  (Stat  Ann § 28.538), *supra.*  These italicized portions of our statute confirm the point made in *Lalli.*  The statute is primarily aimed at articles, materials, devices, et cetera, which have integral connections with a gambling game or which are actually used in gambling operations.  It does not, therefore, encompass the mutuel tip sheet, standing alone as a separate article unconnected with a gambling game or a gambling operation.

Obviously, we do not attempt to rule upon whether the legislature could prohibit possession of such tip sheets, or whether the penal code, in some other section, proscribes in some way the possession or use of the tip sheet.  For present purposes, it is sufficient to conclude that no offense was charged under the section in question.  Other questions presented need not be answered in view of this disposition.

The judgment is reversed.

KAVANAGH, C. J., and DETHMERS, KELLY, SOURIS, O'HARA, and ADAMS, JJ., concurred with SMITH, J.

BLACK, J., concurred in result.